**Alan W. SCHWARTZ and Genevieve Schwartz, h/w, Plaintiffs,**

v.

**SUBARU OF AMERICA, INC., Defendant.**

Civ. A. No. 93–6379.

United States District Court, E.D. Pennsylvania.

May 5, 1994.

Fred J. Ambrose, Ambrose Associates, Bala Cynwyd, PA, for plaintiffs.

Joseph E. O'Neil, Maureen A. Ostein, Lavin, Coleman, Finarelli & Gray, Philadelphia, PA, for defendant.

### MEMORANDUM

ROBERT F. KELLY, District Judge.

At around 11:30 p.m. on the evening of February 8, 1992, plaintiff Alan W. Schwartz ("Schwartz") left a tavern called the Sportsman Bar on Kensington Avenue in Philadelphia, where he had been shooting pool and drinking for several hours, and got into his 1983 Subaru Hatchback. Schwartz had purchased the Subaru new in 1983 and the vehicle had nearly 80,000 miles on its odometer.

Schwartz drove onto I–95 and headed northbound.

Schwartz is unable to recall anything about what occurred next, but a witness stated that at a point near Fraley Street, Schwartz' Subaru suddenly veered off towards the right, crossed one lane of the highway, hit the guardrail, and then swept back across four lanes of traffic, striking another car, and finally colliding with the center guard rail. Schwartz' Subaru came to rest next to the center guard rail, facing south. Schwartz, who was not wearing a seat belt, had been thrown from the vehicle and seriously injured.[1] Schwartz was taken to Frankford–Torresdale Hospital.

Two emergency rooms physicians at Frankford–Torresdale noted Schwartz positive for alcohol on his breath, and a blood alcohol test performed at Frankford–Torresdale nearly two hours after the accident showed a blood alcohol reading of 0.24%, well over two times the legal limit in Pennsylvania. Upon transfer to Thomas Jefferson Hospital at 3 a.m., Schwartz' blood alcohol level was 0.15%.

Prior to the night of the accident, Schwartz had never reported any difficulties with the Subaru, except than that its advancing age was resulting in increasing maintenance. He also stated that as far as he could recall, it was operating normally on the night of the accident. Nevertheless, seven months after the accident, in September 1992, a lawyer representing Schwartz contacted Subaru, advising of a pending claim against Subaru. A Subaru representative wrote back to Schwartz' attorney, asking for substantiation of the claim and requesting the opportunity to inspect the vehicle.

Schwartz' attorney advised by a letter dated December 29, 1992 that the vehicle was a "total loss," but that he would forward photographs of the damaged vehicle "as part of our settlement package." When Schwartz' attorney contacted Subaru by letter dated January 8, 1993, the letter included a detailed description of Schwartz' many injuries, a brief summary of Pennsylvania products liability law regarding the malfunction of defective products, and a settlement demand of $5,000,000. But the "settlement package" did not include any photographs of the wrecked Subaru, nor did the letter inform Subaru that the vehicle was at that time in plaintiff's custody, having been towed from a police impound lot to a private lot in Bala Cynwyd, Pennsylvania, a short distance from the offices of Schwartz' attorney. To the contrary, the January 8, 1993 letter stated that the vehicle "was a total loss and was subsequently junked."

In fact, nearly six months prior to notifying Subaru of his possible claim, in April 1992, Schwartz' attorney had hired an investigator, who in turn hired an automotive expert to examine the Subaru. This expert supplied Schwartz' attorney with a report which opined that all the damage was impact-related, and found no evidence of any mechanical defect or malfunction.

In the summer of 1993, the owner of the lot, having never received storage fees from Schwartz, his attorney, or his investigator, sold the Subaru to a junkyard for scrap. Subaru was never informed of the existence or location of the vehicle or given an opportunity to inspect it prior to its destruction.

■ Schwartz and his wife filed suit against Subaru on November 1, 1993 in the Court of Common Pleas for Philadelphia County, opting to proceed under what is known as the "malfunction" theory of products liability. Subaru removed the case to federal court and is now moving for summary judgment, based on two arguments: that the destruction of the Subaru in and by itself warrants judgment in Subaru's favor, and second, that the undisputed facts on the record do not support a case under the malfunction theory of product liability.

In *Roselli v. General Electric Company*, 410 Pa.Super. 223, 599 A.2d 685 (1991), the Superior Court upheld the granting of summary judgment against plaintiffs who had lost a disputed product without allowing a defendant an opportunity to inspect it. The

---

1. Schwartz' injuries included skull and face fractures, multiple lacerations, and the loss of his left eye.

trial court had ruled that summary judgment was appropriate because plaintiffs had deprived defendant "the most direct means of countering their allegations via expert testing and analysis." *Id.* at 225, 599 A.2d at 687.

In *Roselli*, the plaintiff-wife was a waitress who had been injured when an allegedly defective coffee carafe shattered. Plaintiffs had the fragments of the broken carafe in their possession, but lost them prior to allowing defendant to inspect them. *Id.* at 225, 599 A.2d at 685.

The Superior Court stated that as a policy matter, permitting claims for defective products where the product has been disposed of before defendant was given the opportunity to examine the product would encourage false claims and make the legitimate defense of valid claims more difficult. Numerous courts applying Pennsylvania law have agreed. *See Sipe v. Ford Motor Company,* 837 F.Supp. 660 (M.D.Pa.1993); *Lee v. Boyle–Midway Household Products, Inc.,* 792 F.Supp. 1001 (W.D.Pa.1992). *See also Schmid v. Milwaukee Electric Tool Corporation,* 13 F.3d 76 (3d Cir.1994), Recently, the Superior Court extended the *Roselli* holding to include instances when a plaintiff never even had control of the product, and the product was discarded by a third party. *See DeWeese v. Anchor Hocking Consumer and Industrial Products Group,* 427 Pa.Super. 47, 628 A.2d 421 (1993).

The rationale behind the *Roselli* decision is a sound one and could have no better application than this case, where plaintiff not only had possession of the product under dispute, but chose to allow that product to be destroyed, months before the filing of this case, after first having his own expert inspect it. That plaintiff admittedly did so because he did not want to pay for the costs of storage is bad enough, but it is particularly shocking that he did so after first receiving an expert report which provided no support whatsoever to his potential claim against Subaru.

■ The spoliation of evidence issue by itself would be sufficient to warrant summary judgement in favor of Subaru. However, summary judgment is also required by the undisputed facts on the record. The Pennsylvania Supreme Court has stated that a plaintiff has made out a prima facie case under the "malfunction" theory if it presents no evidence of a reasonable secondary cause in its case in chief. *Rogers v. Johnson & Johnson Products,* 523 Pa. 176, 565 A.2d 751 (1989). However, as the Superior Court noted in *Roselli,* defendants in malfunction cases do not have the burden of proving the existence of secondary causes or abnormal use, only of identifying other possible non-defect oriented explanations. *Id.* 599 A.2d at 688. In *Roselli,* the Superior Court cited its prior decision in *Lonon v. The Pep Boys,* 371 Pa.Super. 291, 538 A.2d 22, 26 (1988), where it stated that:

> [w]here an explanation consistent with the existence of a defect is as probable as an explanation inconsistent with the existence of a defect, the plaintiff cannot be held to have met his burden. A jury may not be permitted to speculate ... It is the duty of the trial court to determine whether or not this requirement has been met in the first instance before the issue can be submitted to the jury.

*Roselli, supra,* [599 A.2d] at 688.

■ This case is about to enter the Court's trial pool, and plaintiffs have never identified a single part or component manufactured by Subaru which caused the "malfunction" they allege took place. This is unusual even in a malfunction case. Even more unusual is the extreme obviousness of both an alternative reasonable secondary cause, i.e., the relatively advanced age and, therefore, wear and tear on the car, *and* abnormal use, i.e., Schwartz' driving after drinking.[2]

These facts make it inconceivable that plaintiffs' case would be able to survive a directed verdict motion at the close of evidence. In addition, plaintiff's own testimony, or more accurately, his complete absence of testimony, on the subject of the accident

---

**2.** Plaintiffs contend that the two blood alcohol tests produced "false positive" results, attributable to pain-killers he received from emergency personnel.

itself provides no support for his malfunction theory, or for any other theory of liability.[3]

In short, given the above, I find that the undisputed facts of this case do not allow for even the most circumstantial of inferences that the accident was attributable to a defect present when the vehicle left the control of defendant Subaru in 1983.

Accordingly I am entering the following order:

### ORDER

AND NOW, this 5th day of May, 1994, upon consideration of defendant's motion for summary judgment and plaintiffs' response, it is ORDERED that:

1. Defendant's motion for summary judgment is GRANTED; and

2. The Clerk of Court is directed to list this case as CLOSED.

---

**3.** Plaintiffs similarly had no expert testimony which would have supported the malfunction theory.