Wilma J. DANSAK

v.

CAMERON COCA–COLA BOTTLING
COMPANY, INC., Appellant (at
1285),

v.

OWENS–ILLINOIS GLASS CONTAIN-
ERS, INC. and Owens–Brockway
Glass Containers, Inc.

Wilma J. DANSAK, Appellant (at 1372),

v.

CAMERON COCA–COLA BOTTLING
COMPANY, INC.

v.

OWENS–ILLINOIS GLASS CONTAIN-
ERS, INC. and Owens–Brockway
Glass Containers, Inc.

Superior Court of Pennsylvania.

Argued Feb. 26, 1997.
Filed Nov. 18, 1997.

Michael F. Nerone, Pittsburgh, for Cameron Coca-Cola Bottling Co.

Matthew R. Wimer, Pittsburgh, for Dansak.

James D. Morton, Pittsburgh, for Owens-Illinois.

Before BECK, FORD ELLIOTT and HESTER, JJ.

FORD ELLIOTT, Judge:

In this case, we hold that the trial court erred when it granted summary judgment to defendants based on the "spoliation of evidence" doctrine. We therefore reverse the trial court's order granting summary judgment to appellee Cameron Coca–Cola Bottling Company, Inc. ("Cameron") at No. 1372 Pittsburgh 1995. We also reverse the trial court's grant of summary judgment to appellee Owens–Brockway Glass Containers, Inc., formerly known as Owens–Illinois Glass Containers, Inc. ("Owens") at No. 1285 Pittsburgh 1995.[1]

The facts of the case are drawn from appellant Wilma Dansak's deposition, taken on June 21, 1994. She stated that she was injured on December 3, 1991, while working the midnight–to–8:00 a.m. shift at a CoGo's convenience store in White Oak, Pennsylvania. The injury arose as Dansak was removing glass bottles of soda from their plastic "six-pack" containers and placing them in the store's coolers. The six-packs are delivered to CoGo's in cardboard boxes. Dansak was the only employee responsible for filling the cooler with soda bottles, and was the only employee in the store at the time.

On the night in question, the boxes were stacked four-high from the floor in the storage area behind the cooler. As was her custom, Dansak removed the six-pack from the topmost box, held it in her left arm, and removed a bottle from the pack with her right hand, using a twisting motion. In doing so, she cut her right hand on a broken adjacent bottle, which remained anchored within the six-pack's plastic casing. According to Dansak, the entire bottom part of the broken bottle was missing.

Upon noticing that she had been cut, she put down the six-pack and ran to call for medical assistance. She never went back to the cooler to examine the six-pack or the box. However, she states that she would have noticed (but did not notice) the presence of broken glass or spilled liquid in the box. She tended to her hand while waiting for assistance to arrive; she was then immediately hospitalized. She claims that the injury has caused, *inter alia*, nerve damage (reflex sympathetic dystrophy) in her hand.

Dansak later learned that her store manager threw away the six-pack, including the broken bottle. No party to the litigation was responsible for the bottle's disappearance, and no party ever had the opportunity to inspect the product before it was destroyed. While Dansak has not consistently identified the exact type of soda contained in the six-pack,[2] she has never wavered in identifying the six-pack as coming from a box containing Cameron's products.

On January 25, 1993, Dansak commenced an action against Cameron alleging strict products liability and breach of warranty. Cameron later filed a complaint to join Owens, its glass bottle supplier, as an additional defendant.

Cameron filed a motion for summary judgment, alleging that Dansak's claim was barred because (1) she could not produce to the defense the product that injured her, and (2) she could not proceed on a "malfunction" theory of products liability because she could not establish a defect in the product or eliminate reasonable secondary causes for the product's malfunction. On February 14, 1995, without issuing a supporting opinion, the trial court granted summary judgment to

---

1. Owens is one entity which changed its name, not two entities, as the caption would suggest. (See Docket No. 30, ¶¶ 5–6.)

2. Specifically, on November 4, 1992, before filing suit, Dansak filled out a Package Questionnaire supplied by Cameron, in which she described the incident. In the questionnaire, she stated that she was cut on a bottle of "Coke (Classic?)". (Cameron's R.R. 110a.) At the time, she believed she had been cut on a bottle of Coca–Cola Classic. (*Id.* at 97a.) She later had a conversation with her store manager, after which she came to believe that she had been cut on a bottle of cream soda or root beer. (*Id.* at 98a–99a.) Cameron does not contest that it sells both types of products.

Cameron. Owens then filed a motion for summary judgment on grounds identical to Cameron's. The trial court, without issuing a supporting opinion, granted this unopposed motion on June 13, 1995. After Dansak appealed to this court, the trial court issued a memorandum in support of its judgment in favor of Cameron [3] on the ground that Cameron was "greatly prejudiced" by Dansak's failure to preserve the product for inspection.

■ Our standards on appeal for ruling on a grant of summary judgment are well known.

The trial court must accept as true all well-pleaded facts in the non-moving party's pleadings, and give to him or to her the benefit of all reasonable inferences to be drawn therefrom. *Jefferson v. State Farm Insurance*, 380 Pa.Super. 167, 170, 551 A.2d 283, 284 (1988). Summary judgment should not be entered unless the case is clear and free from doubt. *Hathi v. Krewstown Park Apartments*, 385 Pa.Super. 613, 615, 561 A.2d 1261, 1262 (1989). A grant of summary judgment is proper where the pleadings, depositions, answers to interrogatories and admissions on file support the lower court's conclusion that no genuine issue of material fact exists and that the moving party is entitled [to] judgment as a matter of law. Pa. R.C.P. No. 1035, 42 Pa.C.S.A.; *Hatter v. Landsberg*, 386 Pa.Super. 438, 440, 563 A.2d 146, 147–48 (1989). *See Penn Center House, Inc. v. Hoffman*, 520 Pa. 171, 176, 553 A.2d 900, 903 (1989) (entire record before lower court must be thoroughly examined and all

doubts as to the existence of a genuine issue of material fact are to be resolved against a grant of summary judgment). We will overturn a trial court's entry of summary judgment only if there has been an error of law or a clear abuse of discretion. *McCain v. Pennbank* [379 Pa.Super. 313, 318], 549 A.2d 1311, 1313 (1988).

*Troy v. Kampgrounds of America, Inc.*, 399 Pa.Super. 41, 44–46, 581 A.2d 665, 667 (1990), citing *O'Neill v. Checker Motors*, 389 Pa.Super. 430, 434–35, 567 A.2d 680, 682 (1989).

■ The primary question on appeal is whether the trial court erred as a matter of law when it granted summary judgment based on the spoliation of evidence doctrine.

In *Roselli v. General Electric Co.*, 410 Pa.Super. 223, 599 A.2d 685 (1991), the court found that when a plaintiff voluntarily disposes of the product which he claims is defective, summary judgment in favor of the defendant is appropriate:

To permit claims of defective products where a purchaser of the product has simply thrown it away after an accident, would both encourage false claims and make legitimate defense of valid claims more difficult. It would put a plaintiff (or plaintiff's attorney) in the position of deciding whether the availability of the item would help or hurt his or her case. Where producing the product for defense inspection would weaken rather than strengthen a case, we unfortunately are obliged to conclude that some plaintiffs and attorneys would be unable to resist the temptation to have the product disappear.

3. The court's statement reads in its entirety as follows:

This products liability case asserting [Restatement (2d) of Torts section] 402(a) liability involves alleged injury to Plaintiff caused by the breaking of a soda bottle at a convenience store. While Plaintiff's case rests on manufacture defect, the allegedly defective bottle is unavailable for inspection. By Plaintiff's own admission, convenience store personnel disposed of the bottle immediately after the accident. It is improper to impose liability on a manufacturer when such manufacturer is unable to inspect the condition of the product. It is difficult to assert a defense and manufacturer is greatly prejudiced.

Furthermore, Plaintiff herein is not protected by 402(a). Plaintiff was not a consumer or

a user of the soda bottle. Rather, plaintiff was an employee stocking the soda shelves. Plaintiff's status within the chain of distribution amounts to less than a bystander. The imposition of 402(a) liability requires more.

Dansak's Reply Brief, Appendix A, p. ii.

We find the second paragraph of the court's statement to be of no effect. The "consumer or user" issue had already been litigated at the preliminary objection stage. At that time, Judge Judith Friedman overruled defendants' preliminary objection in an opinion dated August 5, 1993. (Docket Nos. 17, 18.) Judge Friedman's decision is binding on the trial court under the "coordinate jurisdiction" doctrine. *Boyle v. Steiman*, 429 Pa.Super. 1, 12, 631 A.2d 1025, 1031 (1993).

*Roselli, supra* at 228, 599 A.2d at 687–88 (citation omitted).

Pennsylvania state and federal cases applying this spoliation of evidence doctrine have consistently granted summary judgment to defendants when the plaintiff was in any way at fault for failing to preserve the defective product. *See id.* (plaintiff simply threw away allegedly defective glass carafe), *citing Martin v. Volkswagen of America*, No. 88–8261, 1989 WL 81296 (E.D.Pa. July 13, 1989) (plaintiff sold allegedly defective auto); *Schroeder v. Department of Transportation*, 676 A.2d 727, 731 (Pa.Cmwlth.1996), *allocatur granted*, 546 Pa. 672, 685 A.2d 549 (1996) (plaintiff assigned title in allegedly defective truck to insurer without good cause; third party disposed of truck); *Schwartz v. Subaru of America, Inc.*, 851 F.Supp. 191, 192 (E.D.Pa.1994) (plaintiff stored allegedly defective auto in lot and failed to pay storage fees; lot owner disposed of auto); *Smith v. American Honda Motor Co., Inc.*, 846 F.Supp. 1217, 1221 (M.D.Pa.1994) (plaintiff allowed auto containing allegedly defective seatbelt to be demolished).

However, a question remains whether Pennsylvania law has extended this doctrine to situations where, as here, the plaintiff was not at fault for disposing of the product. Cameron cites several cases as standing for the proposition that, indeed, the doctrine applies regardless of the plaintiff's fault. We address each case in turn.

In *DeWeese v. Anchor Hocking Consumer and Industrial Products Group*, 427 Pa.Super. 47, 628 A.2d 421 (1993), a busboy at a country club was injured when the glass pitcher that he had begun filling with boiling water exploded. Plaintiff testified that the club's storage area contained more than a dozen pitchers of three different types. He did not recall choosing any particular type of pitcher and could not identify the manufac-

turer of the pitcher. While plaintiff was taken to the hospital, plaintiff's co-employees disposed of the pitcher. The trial court granted summary judgment to defendant because "without the pitcher, there is simply no evidence tending to establish that the pitcher involved in this case was manufactured by Anchor Hocking or sold by Lewis Brothers." *Id.* at 51, 628 A.2d at 423. In other words, *DeWeese* turned on the fact that "[plaintiff's] failure to preserve the shattered pitcher has precluded him from raising a genuine issue of material fact *regarding the identity of its manufacturer and seller.*" *Id.* at 53–54, 628 A.2d at 424 (emphasis added). The instant case differs in one critical respect from *DeWeese:* here, Dansak can identify Cameron as the supplier of the six-pack at issue.

Cameron next points out that two cases interpret *DeWeese* as extending the *Roselli* rationale to cases where the plaintiff was not at fault in losing the defective product. *See Schroeder, supra* at 730; *Schwartz*, 851 F.Supp. at 192. Both cases are not binding on this court[4] and in any event are inapposite. As noted above, the plaintiffs in both *Schroeder* and *Schwartz* were at fault for not preserving the defective product.

More importantly, *DeWeese* does not support the sweeping rule advocated by Cameron. It is true that *DeWeese* cited *Roselli* for the general proposition that a plaintiff's failure to produce the product for inspection "will render summary judgment against him appropriate." *DeWeese, supra* at 50, 628 A.2d at 423. It is also true that the plaintiff in *DeWeese* was not at fault. However, *DeWeese* failed to carry a majority on the spoliation issue; thus, any discussion of spoliation in *DeWeese* is not binding on this court.[5] Further, *DeWeese* is not a spoliation case. *DeWeese* turned on the fact that plaintiff failed to produce any verified evidence[6]

---

4. Federal cases, such as *Schwartz*, interpreting Pennsylvania law are not binding on this court. *Clay v. Advanced Computer Applications, Inc.*, 370 Pa.Super. 497, 506 n. 5, 536 A.2d 1375, 1380 n. 5 (1988), *reversed in part on other grounds*, 522 Pa. 86, 559 A.2d 917 (1989). Nor are Commonwealth Court cases such as *Schroeder*. *Commonwealth v. McDermott*, 377 Pa.Super. 623, 547 A.2d 1236, 1240 (1988).

5. In *DeWeese*, one judge concurred in the result and a second specifically disagreed with the majority's discussion of *Roselli*.

6. In *DeWeese*, the country club's office manager wrote a letter to plaintiff's counsel, prior to the accident, stating that Anchor Hocking manufactured and Lewis Brothers sold the pitcher. The court found that this letter could not be considered to create a genuine issue of material fact in

whatsoever that defendants' products were the cause of plaintiff's injury—an essential element of a *prima facie* products liability case. *Id.* at 52–54, 628 A.2d at 424; *see also id.* at 54–55, 628 A.2d at 425 (Ford Elliott, J., concurring). Finally, the *Roselli* rationale is based at least in part on the need to deter and punish plaintiffs who voluntarily dispose of an allegedly defective product. In short, we see no basis in *DeWeese* for extending *Roselli* to cases where, as here, the plaintiff was not at fault and can identify the product supplier.

Next, Cameron cites *Sipe v. Ford Motor Company*, 837 F.Supp. 660 (M.D.Pa.1993). In that case, plaintiff alleged that he was injured by an electrical charge from a miswired engine block heater. Plaintiff's employer repaired the heater before defendant's expert could inspect it. Citing *Roselli* and *Martin, supra*, the court granted summary judgment to Ford, despite the fact that the repair was beyond plaintiff's control. The court reasoned that products liability cases often turn on competing expert testimony regarding the product itself: "to allow a plaintiff to go forward with a case in which the defendant's expert would not be able to examine the very product at issue would be unfairly prejudicial." *Id.* at 661. The court also found that while the defendant could still cross-examine plaintiff's witnesses, this would provide only an incomplete defense. Moreover, it would not be feasible to inspect another heater, as plaintiff claimed a defect in only the specific, now-repaired heater. For these "public policy" reasons, the court dismissed the case against Ford. *Id.* We note that these concerns are echoed in the trial court's opinion. *See* footnote 3, *supra*.

In addition to the fact that *Sipe* is not binding on this court (*see Clay, supra*), we are not persuaded by *Sipe*'s analysis. First, *Sipe* makes no mention of the malfunction theory of products liability, which will be described further *infra*. Second, it is not true that the defendant must resort solely to cross-examining the plaintiff's witnesses. The defendant may be able to present evi-

dence of its business practices and safety procedures, as well as expert and witness testimony, to establish that the product could not have been defective as alleged when it left defendant's possession. The defendant is also free to present to the jury, through all of the available testimonial and documentary evidence in the case, proof that one or more non-defect-oriented factors are more likely to have caused the accident than a manufacturing defect. We are mindful of the fact that it is the plaintiff who retains the burden of proof at trial, and that the plaintiff may be just as prejudiced as the defendant (if not more so) by her inability to present expert testimony based on tests of the product in question. Third, *Sipe* has been abrogated in the Third Circuit by *Schmid v. Milwaukee Electrical Tool Corp.*, 13 F.3d 76 (1994). *Schmid* found that under both federal and Pennsylvania law, the spoliation of evidence doctrine is a basis for sanctioning a litigant for failing to preserve the product at issue. This sanction may range from a mild "spoliation inference" (a jury instruction that "the destroyed evidence would have been unfavorable to the position of the offending party"), to harsher sanctions. *Id.* at 78. While *Schmid* is not factually on point with the instant case, it does teach that

> the key considerations in determining whether a [drastic] sanction is appropriate should be: (1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party and, where the offending party is seriously at fault, will serve to deter such conduct by others in the future.

*Id.* at 78–79, citations omitted. *Schmid* plainly instructs that the plaintiff's degree of fault is indeed a major component of whether severe sanctions such as dismissal are appropriate in a given case. This conclusion is further supported by the recent panel decision of this court in *Long v. Yingling*, 700 A.2d 508 (Pa.Super.1997), in which it was held that the spoliation doctrine does not

---

part because it was not "presented by affidavit, deposition, or part of any verified discovery."

*Id.* at 53 and n. 2, 628 A.2d at 424 and n. 2.

apply where the *defendants* or agents thereof maintained exclusive possession of the allegedly defective product, which disappeared at some point in the litigation. *See id.* at 513 (where the policy considerations behind the rule—preventing fraudulent claims and removing plaintiffs from being in a position of deciding whether to preserve the product—are absent, the rule should not apply).

 We conclude that no controlling Pennsylvania authority *mandates* summary judgment whenever the plaintiff fails to preserve the defective product. In fact, a recent panel of our court has rejected this "broad conclusion" as "untenable." *O'Donnell v. Big Yank, Inc.,* 696 A.2d 846, 848 (Pa.Super.1997) (summary judgment not warranted for plaintiff's failure to preserve defective pants when they caught fire while plaintiff was wearing them). We understand that *O'Donnell* is distinguishable from this case because the plaintiff in *O'Donnell* alleged a design defect, and could offer proof of the defect by examining other, identical products. Nevertheless, we agree that "in cases where the plaintiff is able to establish a defect even if the specific product is lost or destroyed, the case must be allowed to proceed." *Id.* at 848–49. As set forth below, we find that under the facts presented here, Dansak can establish a defect through circumstantial evidence even though the product has been destroyed.

We also find persuasive a federal case holding that even in cases of a manufacturing defect, a plaintiff could prove a defect through a malfunction theory without producing the product itself. In *Gordner v. Dynetics Corp.,* 862 F.Supp. 1303 (M.D.Pa. 1994), plaintiff alleged that a pin broke on defendant's machine, causing injury. She sued on a strict products liability theory. Through no party's fault, the pin was lost before any party had the opportunity to inspect or test it. *Gordner* reasoned that under the malfunction theory of products liability, the plaintiff "is relieved of demonstrating precisely the defect" in the product, and may prove the existence of a defect by circum-

stantial evidence. *Id.* at 1305. *Gordner* concluded that under *Rogers v. Johnson & Johnson Products, Inc.,* 523 Pa. 176, 181–83, 565 A.2d 751, 754 (1989), "the actual product which is alleged to be defective is more than is required to prove a case by circumstantial evidence." 862 F.Supp. at 1308.[7] *Gordner* bolstered its conclusion by noting that in *Troy, supra,* plaintiffs survived summary judgment on a theory that a specific valve caused the explosion that injured plaintiffs, even though the valve was destroyed in the fire. *Id.* at 1306. Finally, after critiquing *Roselli* and *Sipe* (*id.* at 1307–08), *Gordner* concluded that the spoliation of evidence doctrine should be limited to its value as a deterrent to parties who would be tempted to dispose of the offending product: "to hold that no plaintiff may recover in a product liability action when the actual product which is alleged to be defective is unavailable, regardless of the conduct of the plaintiff, is an unwarranted expansion of the doctrine of spoliation of evidence." *Id.* at 1308.

We agree with the sound reasoning of *Gordner:* failure to produce the product is not fatal to Dansak's claim if she can proceed with circumstantial evidence under a malfunction theory, and Dansak was in no way at fault for disposing or failing to preserve the product. Summary judgment to Cameron based on the spoliation doctrine was therefore unwarranted.

 We now address Cameron's contention that Dansak cannot establish the elements of a products liability action under the malfunction theory of products liability.

When advancing a theory of strict product liability, a plaintiff has the burden of showing that the product was defective, that the defect was the proximate cause of his or her injuries and that the defect existed at the time the product left the manufacturer. In certain cases of alleged manufacturing defects,[8] however, the plaintiff need not present direct evidence of the defect. When proceeding on a mal-

---

7. The malfunction theory of products liability is described further *infra.*

8. When a plaintiff seeks to prove that an entire line of products was designed improperly, the plaintiff need not resort to the malfunction theo-

ry. Rather, he or she may prove the defect by presenting expert testimony based on an examination of similar articles to the one that injured the plaintiff. *See, e.g., O'Donnell, supra* at 849.

function theory, the plaintiff may 'present a case-in-chief evidencing the occurrence of a malfunction and eliminating abnormal use or reasonable, secondary causes for the malfunction.' *O'Neill v. Checker Motors Corp.*, 389 Pa.Super. 430, 435, 567 A.2d 680, 682 (1989).... From this circumstantial evidence, a jury may be permitted to infer that the product was defective at the time of sale....

Although proof of a specific defect is not essential to establish liability under this theory, the plaintiff cannot depend upon conjecture or guesswork. 'The mere fact that an accident happens, even in this enlightened age, does not take the injured plaintiff to the jury.' [*Woodin v. J.C. Penney Co., Inc.*, 427 Pa.Super. 488, 492, 629 A.2d 974, *citing* ] *Stein v. General Motors Corp.*, 58 D. & C.2d 193, 203 (Bucks 1972), *aff'd*, 222 Pa.Super. 751, 295 A.2d 111 (1972)....

The malfunction theory, thus, does not relieve the burden of establishing a defect. However, '[t]he malfunction itself is circumstantial evidence of a defective condition.' *D'Antona v. Hampton Grinding Wheel Co., Inc.*, 225 Pa.Super. 120, 124, 310 A.2d 307, 309 (1973)....

*Ducko v. Chrysler Motors Corp.*, 433 Pa.Super. 47, 49–53, 639 A.2d 1204, 1205–06 (1994) (other citations omitted).

■■■ Thus, in a products liability case the plaintiff seeks to prove, through whatever means he or she has available under the circumstances of the case, that a product was defective when it left the hands of the manufacturer. In some cases, the plaintiff may be able to prove that the product suffered from a specific defect by producing expert testimony to explain to the jury precisely how the product was defective and how the defect must have arisen from the manufacturer or seller. In cases of a manufacturing defect, such expert testimony is certainly desirable from the plaintiff's perspective, but it is not essential. The plaintiff, even without expert testimony articulating the specific defect, may be able to convince a jury that the product was defective when it left the seller's hands by producing circumstantial evidence. Such circumstantial evidence includes (1) the malfunction of the product; (2) expert testimony as to a variety of *possible* causes; (3) the timing of the malfunction in relation to when the plaintiff first obtained the product; (4) similar accidents involving the same product; (5) elimination of other possible causes of the accident; and (6) proof tending to establish that the accident does not occur absent a manufacturing defect. *See* Litvin & McHugh, *Pennsylvania Torts: Law and Advocacy* (1996) § 9.33. However the plaintiff chooses to present his or her case, the goal is the same: to prove that the product was not only defective, but that such a defect existed when it left the hands of the seller.

■■■ Conversely, expert testimony is not essential to the defendant's defense. Rather, the defendant will present whatever available evidence is appropriate to the circumstances of the case in order to convince the jury that the plaintiff has not carried his or her burden of proving, by a preponderance of the evidence, that the defect was the responsibility of the defendant.

We must bear in mind that Dansak's case was dismissed on summary judgment, not after a trial. We thus examine the interplay between our summary judgment standards and the malfunction theory of products liability.

Cameron and Owens have the burden of establishing that no genuine issue of material fact exists and that they are entitled to judgment as a matter of law. They seek to carry this burden by establishing that Dansak cannot present a case-in-chief evidencing the occurrence of a malfunction and eliminating abnormal use or reasonable, secondary causes for the malfunction. We address each of these contentions in turn.

■■■ First, accepting as true all facts presented by the non-moving party (Dansak) and granting her the benefit of all inferences therefrom, a jury could find that the bottle at issue malfunctioned. As noted above, Dansak testified that she removed a six-pack of glass bottles from a cardboard box of six-packs supplied by Cameron. She opened the carton, removed a six-pack, and was cut by a broken bottle in the six-pack. Because the bottle was obviously broken at some point

before it was removed from Cameron's box of six-packs, the jury could find that the bottle was in a defective condition. *Rogers, supra* at 181–83, 565 A.2d at 754 (1989); *Ducko, supra* at 51–53, 639 A.2d at 1206; *Agostino v. Rockwell Mfg. Co.*, 236 Pa.Super. 434, 443–45, 345 A.2d 735, 740 (1975).

 Next, construing all facts and inferences in Dansak's favor, we find that she can present a case-in-chief free of abnormal use or reasonable, secondary causes of the accident. She testified that she is the only person who unpacks soda at CoGo's, and that the bottle at issue was stored within a six-pack container inside a cardboard box that remained unopened in the cooler area until she herself opened the box. Dansak's testimony does not reveal that the six-pack was ever actually exposed to handling (or mishandling) by any other individual. Dansak's case-in-chief (that she opened the box, removed a broken bottle, and was injured thereon) does not, in and of itself, reveal abnormal use or secondary causes of the accident. As stated in *Schlier v. Milwaukee Electrical Tool Corp.*, 835 F.Supp. 839 (E.D.Pa.1993):

> [I]n plaintiff's case-in-chief, plaintiff [need not] negate every theoretically conceivable secondary cause for the malfunction. Rather ... the plaintiff fails to establish a prima facie case only if the plaintiff does not negate evidence of other reasonable, secondary causes or abnormal use that is actually introduced during plaintiff's case-in-chief. In other words ... if, *based upon his own proof*, more than one cause could account for the accident.

*Id.* at 841 (emphasis added) (compare: summary judgment granted to defendants where plaintiff injured himself using a circular saw; while plaintiff's testimony was sufficient to establish that the product may have malfunctioned, his testimony also revealed that he used the saw improperly).

 Cameron argues that Dansak is unable to eliminate reasonable secondary causes because her deposition testimony reveals that the bottle could have been broken at some time after it left the control of Cameron. Specifically, the box containing the six-packs was stored in the cooler area

for an undetermined period of time, and that the cooler area was accessible to other persons besides Dansak during that time. According to Cameron, "any one of these individuals could have mishandled the subject bottle, broken it while moving it or dropped something on it, which would all constitute abnormal use of the product and/or a reasonable secondary cause of the break or fracture of the bottle." (Cameron's brief at 24.) However, we find that the conflict between Dansak's testimony and Cameron's alternative theories must be resolved at trial, not on summary judgment.

 Summary judgment is not warranted simply because the defendant hypothesizes (or even presents evidence of) reasonable secondary causes. This principle was enunciated in *Rogers, supra*. In that case, plaintiff sued the manufacturer of a plaster splint under a malfunction theory. The splint caused third-degree burns to plaintiff's legs. Defendant manufacturer introduced evidence at trial that plaintiff's injuries were caused by a third party's medical malpractice in applying the splint, not by a defect in the splint itself. After the jury held against the manufacturer on a malfunction theory, this court reversed. This court reasoned that since the manufacturer had presented evidence of medical malpractice sufficient to offer this alternate cause to the jury, plaintiff failed to negate alternate causes of the accident. The supreme court reversed: "We cannot agree with this circular logic as it essentially mandates the grant of a directed verdict should the defendant manufacturer produce any evidence of reasonable, secondary causation." *Id.* at 183, 565 A.2d at 754. The supreme court found that the plaintiff presented a case-in-chief free of secondary causes: that is, plaintiff presented evidence that the product itself caused injury. The defendant produced evidence of malpractice as a reasonable secondary cause. The supreme court held that given such conflicting evidence, "the jury was free to adopt [plaintiff's] scenario," and a directed verdict was inappropriate. *Id.* at 184, 565 A.2d at 755.

Later superior court cases have followed *Rogers* in recognizing that while plaintiff *may prevail at trial* only if she eliminates

other reasonable causes of the accident that are fairly raised by the evidence, it is inappropriate to usurp the function of the jury and rule as a matter of law for defendants at the first sign of an alternate theory of causation. *See Ducko, supra* at 49–51, 53–54, 639 A.2d at 1205, 1207 (reversing summary judgment when plaintiff's testimony suggested that auto malfunctioned while defendant's expert testimony indicated that operator error caused crash, because jury could credit plaintiff's version of events); *Brill v. Systems Resources, Inc.,* 405 Pa.Super. 603, 592 A.2d 1377, 1379 (1991) (trial court erred in refusing to instruct jury on malfunction theory; plaintiff testified that chair collapsed while sitting in it normally, while defendant's experts found no defect and opined that abnormal use must have caused accident); *Troy, supra* at 46–50, 581 A.2d at 668–69 (trial court erred by concluding, at summary judgment stage, that despite extensive discovery, plaintiffs had not been able to demonstrate a defect in the appliances "with any degree of reasonable certainty"; trial court also impermissibly credited defendant's experts' alternate theories of causation); *cf. Surowiec v. General Motors Corp.,* 448 Pa.Super. 510, 517–19, 672 A.2d 333, 337–38 (1996) (trial court should have allowed evidence of plaintiff's intoxication as a reasonable alternate cause of auto accident; with this evidence, new trial is justified because 'two reasonable minds could differ as to the cause of the accident'); *Long, supra* at 515 (*plaintiff's* motion for summary judgment properly denied where evidence conflicted as to whether auto accident was caused by malfunction or by operator error); *but see Roselli v. General Electric Co.,* 410 Pa.Super. 223, 228–32, 599 A.2d 685, 688–89 (1991) (summary judgment in favor of manufacturer of glass carafe held appropriate where coffee maker was scorched, charred, and used frequently, and where plaintiffs had disposed of the product and could not account for the product for several years; plaintiffs "failed to eliminate the realistic possibility the glass carafe broke because of its use and handling prior to the date of the accident."). *See also* Litvin and McHugh, *supra* at 341 ("So long as the plaintiff's evidence of a defect, and lack of reasonable secondary causes, is sufficient to withstand a motion for compulsory non-suit, it is for the jury to decide which evidence to accept."). In light of this precedent and authority, we hold that it is inappropriate to compare plaintiff's case-in-chief (that she was injured after removing a broken, defective bottle from a crate of bottles supplied by Cameron) to Cameron's proposed alternate theories of causation and decide as a matter of law that Dansak cannot prevail.

■ We also reject Cameron's contention that Dansak has failed to establish that the bottle was supplied by Cameron. Dansak's testimony to this effect is sufficient, even if she has been equivocal as to the type of Cameron product at issue. *See, e.g., O'Donnell, supra* at 849; *compare DeWeese, supra* at 50–52, 628 A.2d at 423 (1993) (summary judgment in favor of defendant is proper when plaintiff produced no evidence whatsoever that defendant manufactured the allegedly defective carafe).

Finally, we turn to Cameron's own appeal with respect to Owens. Cameron was granted summary judgment on February 14, 1995. On June 13, 1995, Owens was granted summary judgment on identical grounds as Cameron. In light of Dansak's appeal, Cameron filed its own appeal against Owens "for the purpose of preserving its cross-claims against Owens." (Cameron's brief at No. 1285 Pittsburgh 1995, at 11.) In short, Cameron argues that if we reverse the grant of summary judgment to Cameron, we must also reverse the grant of summary judgment to Owens because "both Cameron and Owens stand in an identical position with regard to the issues being raised by the Plaintiff." *Id.* We agree and reverse the grant of summary judgment to Owens as well.

Owens argues that summary judgment in its favor is still proper even if we reverse with respect to Cameron. Citing Cameron's Answer and New Matter, Owens argues that Cameron judicially admitted that the product was non-defective when it left Cameron's possession—thus, the product must have been non-defective when it left the possession of Owens, Cameron's supplier.

We do not agree that Cameron made such a binding judicial admission. Rather, Cam-

eron pleaded in the alternative that it did not supply a defective product to CoGo's, if it is ultimately determined that Cameron is liable to Dansak, then Owens is solely, jointly, or otherwise liable as the supplier of the product. (Cameron's Complaint to Join Additional Defendants, ¶ 9, R.R. 25a.) This common practice of pleading in the alternative is specifically authorized by Pa. R.C.P. 1020(c), 42 C.S.A. ("causes of action and defenses may be pleaded in the alternative"), and Pa. R.C.P. 2252, Pa.C.S.A. (allowing original defendant to allege that a third-party defendant is *solely or jointly* liable to plaintiff).

The order of the court granting summary judgment to Cameron at No. 1372 Pittsburgh 1995 is reversed.

The order of the court granting summary judgment to Owens at No. 1285 Pittsburgh 1995 is reversed.

Jurisdiction is relinquished.

BECK, J., concurs in the result.