**Judy M. TAYLOR, individually and as Administratrix of the Estate of Tarek D. Myrick Plaintiff**

v.

**NATIONAL RAILROAD PASSENGER CORPORATION, John Doe Manufacturing, Inc. Defendants**

No. 00–CV–4506.

United States District Court,
E.D. Pennsylvania.

March 23, 2004.

L. Noel Patterson, R. Jack Clapp & Associates Co., L.P.A., Washington, DC, for Plaintiff.

Paul F.X. Gallagher, Raymond J. Hunter, Thomas W. Harrity, Gallagher Rowan & Egbert P.C., Philadelphia, PA, for Defendants.

## MEMORANDUM AND ORDER

ANITA B. BRODY, District Judge.

On September 5, 2000, plaintiff Judy Taylor ("Taylor") brought this action individually and as the administratrix of the estate of Tarek D. Myrick ("Myrick") against National Railroad Passenger Corporation [hereinafter "Amtrak"], Bombardier Corporation ("Bombardier") and John Doe Manufacturing, Inc. ("John Doe"). On October 16, 2000, plaintiff amended her complaint and added defendant The Budd Company ("Budd"). Plaintiff alleged negligence, strict liability and punitive damages claims against all defendants, and claims of implied warranty of merchantability and implied warranty of fitness for a particular purpose against Bombardier, John Doe, and Budd. Plaintiff has since entered stipulations of dismissal as to defendants Bombardier and Budd. Jurisdic-

tion is based on diversity, and neither party disputes that Pennsylvania law applies to this case. Presently before this court is Amtrak's motion for summary judgment on all counts. For the reasons that follow, Amtrak's motion is granted.

### Factual Background

On September 6, 1998, plaintiff's decedent, Myrick, was traveling between New York and Philadelphia on Amtrak train No. 171, custom class car No. 44789. (Def.'s Mot. Summ. J. ¶ 2.) At or around 2:00 pm on that same day, Myrick's body was found dead next to the track on which the train had been traveling, near mile marker 76. (Pl.'s Ans. at 2.) Although Taylor did not bring forth any evidence or state any facts concerning the events of September 6, 1998 beyond these, Amtrak presented the following additional uncontested facts.

After Amtrak train No. 171 departed Trenton station on September 6, 1998, Amtrak employees began the process of approaching each passenger in order to collect tickets and fares. (Collins Dep. at 38.) During ticket collection, Assistant Conductor Glenn Collins ("Collins") noticed a passenger sitting in the ninth [1] car who was talking into a hand radio. (Id. at 38, 40.) At some point, Collins asked Flagman John MacLamore ("MacLamore"), the Amtrak employee responsible for collecting tickets from passengers in the ninth car, who the man with the hand radio was. (Id. at 42, 43.) According to Collins, MacLamore responded that the passenger was a product line manager from Chicago. (Id. at 42.) When Collins asked MacLamore whether the passenger had presented any identification to that effect, MacLamore

responded that he had not. (Id. at 43.) Collins then decided to return to the ninth car in order to check the passenger's identification. (Id.) When Collins reached the ninth car, however, the passenger was no longer there. (Id. at 45.) Collins then continued walking through the train in an effort to find the passenger. (Id. at 46.) Collins eventually located the passenger approximately two cars away from the ninth car. (Id.) The parties do not dispute that the passenger in question was Myrick.

Upon approaching Myrick, Collins asked Myrick to identify himself. (Id. at 47.) Myrick again stated that he was an Amtrak product line manager.[2] (Id.) At that point, Collins asked Myrick to produce his Amtrak identification card. (Id.) After looking through his pockets and backpack, Myrick indicated to Collins that he might have left his identification card back where he was sitting on the train. (Id. at 47–48.) Myrick then began walking, presumably back toward his seat. (Id. at 48.) Several minutes later, Collins, accompanied by assistant conductor Willie Lawson ("Lawson"), began walking in the direction that Myrick had gone in order "to see if he found the ID." (Id. at 49.)

Pamela Dale Vorke ("Vorke") was the passenger sitting directly across from Myrick in the ninth railcar of the train. (Vorke Dep. at 10.) Vorke stated that, while the train was still moving, she watched Myrick pack his backpack, stand up from his seat, stretch, and say "Well, I guess I'm through for the day." (Id. at 10, 17–18.) Vorke then saw Myrick walk to the end of the railcar, open the door leading into the vestibule separating the ninth and tenth railcars, and enter the vestibule.

---

1. Amtrak train No. 44789 had a total of ten passenger coaches. (Collins Dep. at 40.)

2. Defendant contends that Myrick's identification as an Amtrak product line manager was

false as Myrick was not, nor had he ever been, employed by Amtrak in any capacity. (Def.'s Mot. Summ. J. at 1.) Plaintiff does not dispute this fact.

(*Id.* at 19–20, 21.) Vorke stated that approximately five seconds elapsed between the time that Myrick opened the vestibule door and the time the door closed once again. (*Id.* at 22–23, 26–27.) During that time, Vorke could see into the vestibule.[3] (*Id.*) Immediately after Myrick entered the vestibule, Vorke saw Myrick turn to the left. (*Id.* at 19.) Vorke also observed natural light come into the vestibule a few seconds after Myrick turned to the left. (*Id.* at 22–24.) At the same time that Vorke noticed the presence of natural light, Vorke also felt a cool wind and saw leaves blow into the seating area from the vestibule. (*Id.* at 22–23, 33.) Vorke did not see leaves or natural light coming into the car when Myrick first opened the vestibule door. (*Id.* at 23–24.) Vorke also stated that while she could see into the vestibule, no one besides Myrick was in the vestibule, and the door leading into the next railcar never opened. (*Id.* at 27, 32.)

Attempting to locate Myrick so as to check his identification card, Collins and Lawson eventually entered the ninth car, but did not find Myrick. (Collins Dep. at 51.) On his way into the tenth car, Lawson entered the vestibule between the ninth and tenth railcars of the train. (Lawson Dep. at 35–36.) In the vestibule, Lawson noticed that the exit door separating the vestibule from the outside was open.[4] (Collins Dep. at 55; Lawson Dep. at 36, 38.) Lawson also noticed that the emergency "plunger" was pulled down into the open position. (Lawson Dep. at 36.) The emergency "plunger" is a lever locat-ed above the exit door which, if pulled, releases the air seal which prevents the door from being opened manually. (Collins Dep. at 26–27, 30.) If the lever is pulled, typically in the event of an emergency, the door can be opened manually.[5] (*Id.* at 30.) Lawson then proceeded to push the emergency "plunger" back into the up position, at which time the door closed automatically as designed. (Collins Dep. at 55–56; Lawson Dep. at 36.) After the door closed, Lawson entered the tenth car, which was the last car of the train, and found that Myrick was not there. (Lawson Dep. at 34, 37.) As stated previously, at or around 2:00 pm on that same day, Myrick's body was found dead next to the train tracks, near mile marker 76. (Pl.'s Ans. at 2.)

### Legal Standard

Pursuant to Federal Rule of Civil Procedure 56(c), "[s]ummary judgment should be granted if, after drawing all reasonable inferences from the underlying facts in the light most favorable to the non-moving party, the court concludes that there is no genuine issue of material fact to be resolved at trial and the moving party is entitled to judgment as a matter of law." *Kornegay v. Cottingham*, 120 F.3d 392, 395 (3d Cir.1997). Stated differently, "[t]he inquiry is whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must, as a matter of law, prevail over the other." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202

---

**3.** According to Vorke, the door separating the passenger car from the vestibule opens automatically when a button is pushed. The door then stays open for a period of time before it closes. (Vorke Dep. at 25–26.)

**4.** Collins stated that he had walked through the vestibule separating the ninth and tenth cars when he first attempted to locate Myrick, and, at that time, the door was closed. (Collins Dep. at 69–70.)

**5.** In the event that the door is opened manually, the door will stay in the open position until the lever is returned to its normal position. Once the handle is returned to the normal position, the door will close and the seal will re-engage. (Collins Dep. at 31).

(1986). Moreover, when the nonmoving party bears the burden of proof, it must "make a showing sufficient to establish the existence of [every] element essential to that party's case." *Equimark Commercial Fin. Co. v. C.I.T. Fin. Servs. Corp.*, 812 F.2d 141, 144 (3d Cir.1987) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). If a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," summary judgment must be granted. *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548.

### Discussion

■■■ Amtrak moves for summary judgment on all of Taylor's claims. I will begin by discussing Taylor's negligence claim. Thereafter, I will address Taylor's claim for punitive damages.[6]

■■ In support of her negligence claim, Taylor avers that Amtrak's negligent, careless and reckless conduct was the direct and proximate cause of Myrick's injuries and death. (Compl.¶ 33.) Because negligence is defined as the absence of ordinary care that a reasonably prudent person would exercise in the same or similar circumstances, "[t]he mere occurrence of an accident does not establish negligent conduct." *Martin v. Evans*, 551 Pa. 496, 711 A.2d 458, 461 (1998). In order to make out a prima facie case of negligence under Pennsylvania law, Taylor must show (1) that Myrick was owed a duty of care; (2) that the duty was breached; (3) that Myrick was injured; and (4) that Myrick's injuries were proximately caused by the

---

**6.** Although Taylor alleges that Amtrak is strictly liable to Taylor under the Restatement (Second) of Torts Section 402A because custom class car No. 44789 was defective, she failed to bring forth any evidence in support of her claim of strict product liability. (Compl.¶ 40.) In fact, Taylor failed to even mention this claim in her response to Amtrak's motion for summary judgment. Because this claim was previously addressed by the parties in Amtrak's motion for partial judgment on the pleadings and Taylor's response thereto, which I denied without prejudice to raise the issue again at the time of summary judgment, I will briefly address the claim. Under Section 402A, "one who sells any product in a defective condition unreasonably dangerous to the consumer or user or to his property is subject to liability." Restatement (Second) of Torts, § 402A. To establish liability under this theory, Taylor would first have to show that Amtrak is within the category of businesses which are strictly liable for injuries to consumers caused by dangerous products. If Taylor could satisfy this burden, then, in order to prevail on a claim of strict product liability under Pennsylvania law, Taylor would have to prove that: (1) the product was defective; (2) the defect was the proximate cause of the injuries; and (3) the defect existed at the time the product

left the manufacturer. *Dansak v. Cameron Coca-Cola Bottling Co., Inc.*, 703 A.2d 489, 495 (1997). When a plaintiff cannot present direct evidence of a manufacturing defect, however, she may proceed on a malfunction theory of products liability using circumstantial evidence. *Id.* As the Third Circuit stated in *Altronics of Bethlehem, Inc. v. Repco, Inc.*, a plaintiff establishes a prima facie case under the malfunction theory if she presents a case-in-chief evidencing that: (1) the product malfunctioned; (2) plaintiff used the product as intended or reasonably expected by the manufacturer; and (3) the absence of other reasonable secondary causes. 957 F.2d 1102, 1105 (3d Cir.1992). "From this circumstantial evidence, a jury may be permitted to infer that the product was defective at the time of sale." *Dansak*, 703 A.2d at 496. Even if plaintiff proceeds under a malfunction theory, however, the "plaintiff cannot depend upon conjecture" since "the mere fact that an accident happens ... does not take the injured plaintiff to the jury." *Id.* In this case, even assuming *arguendo* that Amtrak is within the category of businesses to which strict liability applies, Taylor has failed to provide evidence to establish a prima facie case under either of these theories. Amtrak is therefore entitled to summary judgment on this claim.

breach of that duty. *Ellis v. Sherman*, 512 Pa. 14, 515 A.2d 1327, 1328 (1986).

■ Admittedly, Taylor has brought forth no direct evidence to establish Amtrak's negligence. In the absence of direct evidence of defendant's negligence, a plaintiff can nevertheless survive summary judgment by relying solely on circumstantial evidence under the doctrine of *res ipsa loquitur*. The doctrine of *res ipsa loquitur* aids "plaintiff[ ] in making a prima facie case of negligence against the defendant[ ] by allowing an inference of negligence to be deduced from competent evidence on the theory that in the ordinary course of events, the injury or damage complained of would not have occurred in absence of negligence." *Smith v. City of Chester*, 357 Pa.Super. 24, 515 A.2d 303, 305 (1986). When the "facts and circumstances surrounding [the] injury make the inference of the defendant's negligence reasonable," the plaintiff is permitted to present her case to the jury based on an inference of negligence and is relieved of the burden of proving the elements directly. *Toogood v. Rogal*, 573 Pa. 245, 824 A.2d 1140, 1146 (2003). Before the doctrine of *res ipsa loquitur* will apply, however, certain conditions must exist.

The Pennsylvania Supreme Court has adopted the doctrine of *res ipsa loquitur* as stated in Section 328D of the Restatement (Second) of Torts. *Gilbert v. Korvette, Inc.*, 457 Pa. 602, 327 A.2d 94, 100 (1974). Section 328D provides:

(1) It may be inferred that harm suffered by the plaintiff is caused by negligence of the defendant when

(a) the event is of a kind which ordinarily does not occur in the absence of negligence;

(b) other responsible causes, including the conduct of the plaintiff and third persons, are sufficiently eliminated by the evidence; and

(c) the indicated negligence is within the scope of the defendant's duty to the plaintiff.

Restatement (Second) of Torts § 328D.

In this case, Amtrak contends that Taylor has failed to present sufficient circumstantial evidence to allow the jury to infer negligence under the doctrine of *res ipsa loquitur*. In response, Taylor concedes that she has no evidence that Myrick fell or was pushed from Amtrak train No. 171, nor does she have evidence to prove that Myrick did not pull the emergency latch and open the train door himself. (Pl.'s Resp. to Def.'s Mot. Summ. J. at 3.) Although Taylor admits that "[n]ormally, this [lack of evidence] would be problematic for plaintiff because the plaintiff has the burden of proof," Taylor contends that, "in this case, the doctrine of *Res Ipsa Loquitur* [shifts] the burden of proof from the plaintiff to the defendant." (*Id.*) Amtrak, on the other hand, disputes this contention and argues that under Pennsylvania law, the burden of proof remains with the plaintiff in cases where the doctrine of *res ipsa loquitur* applies. (Def.'s Reply at 5.) A central question to the resolution of this issue, therefore, is the determination of who has the burden of proof under the doctrine of *res ipsa loquitur*.

■ In *Gilbert*, the Pennsylvania Supreme Court clarified the effect of the doctrine of *res ipsa loquitur* under Pennsylvania law.[7] The court noted that although the doctrine of *res ipsa loquitur* was originally conceived as an evidentiary

---

7. It should be noted that the Pennsylvania Supreme Court qualified its use of the term "doctrine," by stating "[w]hether *res ipsa loquitur*, a phrase which means no more than 'the things speaks for itself,' may appropriately be called a 'doctrine' is subject to some question." *Gilbert*, 327 A.2d at 97 n. 7.

rule allowing negligence to be established through circumstantial proof, subsequent "confusion between circumstantial proof and an ancient common-law rule requiring carriers to prove freedom from negligence" led Pennsylvania courts to conclude that the doctrine had the effect of shifting the burden of going forward with the evidence to defendants. *Gilbert,* 327 A.2d at 103. Rejecting this understanding of the doctrine, the court in *Gilbert* held that "[r]es ipsa loquitur is neither a rule of procedure nor one of substantive tort law. It is only a shorthand expression for circumstantial proof of negligence—a rule of evidence." *Id.* at 99. Understood correctly as "merely a recognition that circumstantial evidence may be appropriate and adequate proof in a negligence action," application of the doctrine of *res ipsa loquitur* allows the factfinder to determine that a party is negligent based on circumstantial evidence, but does not shift the burden of proof to the defendant to prove an absence of negligence. *Id.* at 98; *accord Zimmerman v. Southeastern Pennsylvania, Transp. Auth.,* 17 F.Supp.2d 372, 379 (E.D.Pa.1998).

The burden of proof, therefore, remains with Taylor under Pennsylvania's doctrine of *res ipsa loquitur.* Taylor, however, has failed to produce a sufficient factual basis to establish the three conditions necessary for the application of the doctrine of *res ipsa loquitur.* For instance, in order to establish the first prerequisite to application of the doctrine, plaintiff must show that "the event is of a kind which ordinarily does not occur in the absence of negligence." Restatement (Second) of Torts § 328D(1)(a). Taylor, however, has failed to produce any evi-

dence to establish what kind of event even occurred in this case. While Taylor summarily states that "[i]ndividuals do not ordinarily fall out of moving trains absent negligence," Taylor has produced no evidence via depositions, affidavits, or any other discovery to support her contention that Myrick *fell.*[8] (Pl.'s Resp. to Def.'s Mot. Summ. J. at 4.) Similarly, Taylor has failed to establish the second prerequisite to application of the doctrine, specifically that "other responsible causes, including the conduct of the plaintiff and third persons, are sufficiently eliminated by the evidence." Restatement (Second) of Torts § 328D(1)(b). In fact, Taylor has produced no evidence to eliminate other responsible causes for Myrick's death, most notably Myrick's own actions. In defense of her failure to bring forth such evidence, Taylor claims that Amtrak spoiled the only evidence which could have eliminated the possibility of other causes by failing to examine the door for defects and fingerprints. (Pl.'s Resp. to Def.'s Mot. Summ. J. at 4.) Taylor, however, also failed to bring forth any evidence establishing her contention that Amtrak spoiled evidence.

Because Taylor has failed to sufficiently meet the requirements of the *res ipsa loquitur* doctrine, she cannot benefit from the doctrine's inference of negligence. Likewise, there is no genuine issue of material fact and Amtrak is entitled to judgment as a matter of law on Taylor's negligence claim. Because Taylor's claim for punitive damages is dependent upon her proving at least one of her underlying claims, Taylor's claim for punitive damages will also be dismissed. I therefore grant Amtrak's motion for summary judgment

---

**8.** Although plaintiff states that "circumstantial evidence clearly indicates that [Myrick] had no suicidal ideations nor plans to kill himself," plaintiff brought forth no such cir-

cumstantial evidence beyond this bald statement. (Pl.'s Resp. to Def.'s Mot. Summ. J. at 2.)

such that Taylor's complaint is dismissed in its entirety.[9]

### ORDER

AND NOW, this ———— day of March 2004, it is **ORDERED** that defendant's motion for summary judgment is **GRANTED** and this case is **DISMISSED WITH PREJUDICE.** Judgment is entered in favor of defendant and against plaintiff.

9. Because plaintiff has failed to establish the identity of defendant John Doe Manufacturing, plaintiff's claims against this unknown entity are also dismissed.