Raymond SMITH, Plaintiff,

v.

**AMERICAN HONDA MOTOR CO., INC., Defendant.**

**Civ. A. No. 93–0340.**

United States District Court, M.D. Pennsylvania.

March 22, 1994.

Michael R. Lynn, Bloomsburg, PA, for plaintiff.

Thomas A. Brophy, Marshall, Dennehey, Warner Coleman & Goggin, Norristown, PA, for defendant.

### MEMORANDUM

DURKIN, United States Magistrate Judge.

Before the court is defendant's motion for summary judgment. (Doc. No. 17).

In this products liability action where jurisdiction is founded on diversity of citizenship, plaintiff seeks damages for injuries sustained in a single vehicle automobile accident which occurred on March 8, 1991 when plaintiff drove his 1988 Honda Accord off Schoolhouse Road and into a telephone pole. In his complaint, plaintiff alleges that at the time of the accident he was utilizing the harness and seat belt mechanism provided by the manufacturer and was duly strapped in, but never-

theless upon impact, the mechanism offered no restraint with the result that plaintiff sustained personal injuries. Plaintiff alleges that these injuries were the proximate result "of the defective shoulder harness and related protective mechanisms on said motor vehicle."

Defendant is American Honda Motor Company, Inc., (Honda) distributor of the Honda vehicle in the United States. Honda filed an answer in which it denied that its product contained any defects. On May 27, 1993, the parties filed a consent pursuant to 28 U.S.C. § 636(c)(1) to have a magistrate judge conduct all proceedings in this case, including the trial and order the entry of final judgment.

After a period of time for discovery, on January 7, 1994, Honda filed a motion for summary judgment to which were attached various documents including a request for admissions directed to plaintiff, plaintiff's deposition, and emergency room and hospital records concerning plaintiff's treatment after the accident, and a supporting memorandum. (Doc. Nos. 17 and 18). On January 28, 1994, plaintiff filed a response to which was also attached certain pages of his deposition as well as an estimate of damage to the vehicle and copies of pictures which are difficult or impossible to discern. On February 8, 1994 defendant filed a reply, together with an affidavit and color photographs of the vehicle in question.

Honda's motion for summary judgment is based on plaintiff's "spoliation" of the evidence necessary to prove his product liability claim, an allegedly defective seat belt mechanism, and that this "spoliation" also deprived Honda of an opportunity to examine the product to attempt to show there was no defect and therefore deprived Honda of the means to defend in this case.

Summary judgment is appropriate when supporting materials, such as affidavits and other documentation, show that there are no material issues of fact to be resolved and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Rule 56(c) "mandates the entry of summary judgment after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Celotex v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Further, Rule 56(e) requires that the non-moving party go beyond the pleadings and by his own affidavits, or by depositions, answers to interrogatories, and admissions on file designates specific facts showing that there is genuine issue for trial. *Id.* at 324, 106 S.Ct. at 2553. In *Anderson v. Liberty Lobby,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) it was held that an opposing party must adduce more than a mere scintilla of evidence in its favor and cannot simply reassert factually unsupported allegations in his pleadings. See *Celotex,* 477 U.S. at 325, 106 S.Ct. at 2553–54. Further, an opposing party cannot defeat summary judgment simply by asserting that a jury might disbelieve an opponent's affidavit. *Liberty Lobby,* 477 U.S. at 256–257, 106 S.Ct. at 2514–15. An asserted disputed fact is "material" if its resolution could affect the outcome of the case and is "genuine" if the evidence bearing on the disputed fact is such that a reasonable person could find for the non-moving party. *Hozier v. Mid–West Fasteners, Inc.,* 908 F.2d 1155, 1158 (3d Cir. 1990).

With the above principles in mind, the magistrate judge will now address the allegations in the complaint, the materials and documentation submitted by the defendant to pierce these allegations in an attempt to show there are no triable issues and that it is entitled to judgment, and the response by plaintiff in an attempt to controvert the defendant's materials and demonstrate that there exist a triable issue of material fact.

Plaintiff alleges in pertinent part that on March 8, 1991 he was the owner of a 1988 Honda Accord. Plaintiff alleges that "the said motor vehicle was in a defective condition as regards the shoulder and seat belt harness mechanisms which was as of March 8, 1991, unreasonably dangerous to the user or consumer." Plaintiff alleges that on that date, he was operating his motor vehicle at a location approximately three (3) miles from his home when, in an attempt to swerve so as

not to run over a rabbit that had crossed his path, his vehicle impacted with a telephone pole. Plaintiff alleges that at the time of the accident, he was utilizing the harness and seat belt mechanism provided by defendant and was "duly strapped in." Plaintiff alleges that nonetheless, upon impact, the harness mechanism offered no restraint and in fact plaintiff's head went through the windshield of the motor vehicle, causing plaintiff to suffer personal injuries. Plaintiff alleges "it is believed and averred that the injuries suffered by plaintiff were the proximate result of the defective shoulder harness and related protected mechanisms on said motor vehicle, regarding which plaintiff asserts strict product liability on behalf of defendant."

To pierce these allegations, Honda initially relies on plaintiff's own deposition testimony as well as matters admitted with respect to a request for admissions which Honda served on plaintiff. The admissions were as follows:

1. On or about March 8, 1991, at approximately 10:34 p.m., plaintiff was involved in a one-car automobile accident, wherein a 1988 Honda Accord, VIN 1HGCA5523JA084992, struck a Bell of Pennsylvania guide pole on State Road, 4006 Schoolhouse Road, Hemlock Township, Columbia County, Pennsylvania.

2. After the accident, plaintiff consented to a Blood Alcohol test after his arrival at Bloomsburg Hospital, and his blood was drawn at approximately 11:30 p.m., on March 8, 1991.

3. A legal Blood Ethanol Test was conducted by the Department of Laboratory Medicine, Geisinger Medical Center, at 11:00 A.M., on March 11, 1991, and plaintiff's blood was confirmed to indicate the presence of Ethanol, in the amount of .179 g/dl.

4. At the above time and date of the automobile accident in question, the subject motor vehicle in this litigation had mileage in the amount of 91,879 miles.

5. State Farm Insurance Company conducted an appraisal of the subject vehicle after the accident on March 14, 1991, and the damage sustained exceeded the then value of the vehicle.

6. On March 15, 1991, plaintiff granted State Farm Insurance Company permission to move the subject vehicle for salvage purposes.

7. The subject Honda Accord presently is not in the possession of plaintiff, his agents or his attorney.

8. The subject vehicle has either been disposed, destroyed, demolished and/or sold for salvage, or scrap component parts.

9. Plaintiff did not retain an expert to examine, test, photograph, inspect, or otherwise examine the subject vehicle prior to its demolition, destruction or disposition for salvage/scrap parts.

10. Plaintiff did not provide American Honda Motor Co., Inc., an opportunity to inspect, test, photograph, examine, or otherwise view the subject vehicle prior to plaintiff granting permission to move the salvage on March 15, 1991.

Plaintiff was subsequently deposed on September 14, 1993. The parts of his testimony on which defendant relies indicate that the 1988 Honda Accord that he was driving had 90,000 miles on it at the time of the accident. (Doc. No. 17, Exh. E, p. 15). After the accident, he purchased another Honda even though he allegedly felt that the seat belt in the subject vehicle did not operate properly. *Id.*, p. 19. Smith testified that he never noticed any fraying or splitting or anything irregular about the seat belt. *Id.* p. 21. He stated:

... The only thing—I'm going to be honest with you—I noticed was that when you yanked the shoulder harness—like this is right before the accident—you will get in the car and you could pull the shoulder harness and it would never lock in.

Like, you know, when shoulder harnesses are supposed to snap to stop on impact. This one—I just notice it maybe a month before the accident and I was going to take it back there and show it to them and have them look at that. And that was the only thing I noticed about the seat belt.

Even though he noticed this one month before the accident, he never reported this observation to Metro Honda where plaintiff purchased his car and had it serviced. *Id.*

pp. 21–22. He further testified that he always wore the seat belt in the vehicle which was a three (3) point restraint system. *Id.* pp. 25–26.

Plaintiff further testified that prior to the accident, he had worked at his place of employment, and had gone to Bloomsburg Nautilus and worked out until 7:00 P.M. *Id.* pp. 31–32. He then went to his friend Kirshman's house where he remained until about 9:45 P.M. *Id.* p. 32. During that time, he consumed three (3) twelve ounce scotch and waters. *Id.* pp. 34–35. He denied drinking "hard shots", *Id.* p. 36, although he told medical personnel after the accident, as reflected in the emergency room records, that he was "drinking 'hard shots' tonite (sic) (own admission)". (Doc. No. 17, Exh. F).

Plaintiff was arrested, charged, pled guilty and convicted for driving under the influence that night "… and I'm not ashamed of it." (Doc. No. 17, Exh. E, p. 36). He was sentenced to a year's probation for those offenses. *Id.* pp. 98–100. Plaintiff maintained that as he was driving down Schoolhouse Road at about 30–35 miles per hour he turned his car to the right to avoid hitting a rabbit in the road. *Id.* pp. 43–44. When he turned to the right he struck the pole. *Id.* He testified that he hit the windshield, although he had no specific recollection of doing so. *Id.* p. 50.

Plaintiff examined his car the following Sunday (two days later on March 10, 1991) at the West End Service station, where it had been towed. *Id.* pp. 53–56. He saw the vehicle one additional time after the accident when he removed the plates after authorizing State Farm to dispose of the car. *Id.* pp. 57–61, 64–68.

On the Sunday two days after the accident, plaintiff and his wife videotaped the vehicle to depict the damage to the vehicle and to show purported damage to the windshield where plaintiff believes his head struck after his driving into the pole. While conducting this inspection of the car and while videotaping, plaintiff did not inspect the seat belt for marks or other indications the seat belt may have grabbed upon impact, nor did plaintiff take any pictures of the seat belt. *Id.* pp. 61–76.

Plaintiff did not take nor is he aware of anyone taking any still photographs of the vehicle after the accident. (Tr. 63–64). He was not aware of any expert examining the vehicle after the accident with respect to examining the seat belt for defects and he did not know if anyone had taken the seat belt out of the car. *Id.* pp. 69–70. When plaintiff viewed the vehicle that Sunday he had in mind the theory that the seat belt did not properly restrain him. *Id.* p. 77. He said to his wife that the "damn thing didn't hold … that's what I said … I don't know what happened." *Id.* p. 77.

In his responsive brief, the plaintiff recognizes that "the requested admissions were admitted to" (Doc. No. 20, p. 1) and does not otherwise take issue with the other evidence on which the defendant relies which consists of the plaintiff's own deposition testimony. Plaintiff claims however that even though the vehicle is unavailable for inspection by anybody, he can prove a defect by circumstantial evidence and therefore summary judgment would be improper. The circumstantial evidence on which he relies consists basically of excerpts from his own deposition testimony which are attached to his brief and which has been appended in full to the defendant's brief. This testimony is to the effect that before the accident, he noticed that the seat belt harness did not "lock in" and could be fully extended. At the time of the accident, plaintiff was wearing his seat belt, but immediately after the accident, when he "came to, there was blood dripping down on my shirt". At that time he also felt a hot sensation like a "burn mark" on the side of his stomach and that his face "kind of numb". Although plaintiff testified that he did not have any recollection of his face or head striking the windshield, he concluded that this must have been the case from "corroborating" evidence which consists of the videotaping of the injuries to his head and the burning or chafing of his torso which he believes is consistent with a brush burn received from a fully extended seat belt, as well as the videotapes that he and his wife took of the car two days later which showed the windshield glass "pushed out". He claims that the hospital records also show that 30 stitches were required to

close wounds on the side of his face and his nose, and that glass shreds that were taken out of his face at the hospital "came from the windshield".

Thus, although plaintiff does not remember hitting the windshield he concludes from the damage to the windshield as shown by the videotapes as well as the damage to his face as shown by the videotapes and the hospital records, that he must have hit the windshield. He then concludes that the seat belt must have failed because had it not failed, he would not have hit the windshield and the fact that it failed is also shown by the brush burn mark on his torso which are consistent with having been caused by a fully extended seat belt. He contends that this circumstantial evidence is enough to defeat the defendant's motion for summary judgment.

Plaintiff also contends that his counsel has learned

"that indeed an inspection of the vehicle *did* occur by defendant's representatives, and that although on that occasion not all elements of the then formally declared "totalled" vehicle were available for inspection, given the broad series of indicia which defendant's by their own admission in their brief state could be performed which would be relevant to an attempt to extrapolate data regarding the condition of the safety belt mechanism, summary judgment would be inappropriate in that opportunity to inspect did exist and in fact inspection did occur."

In its reply, defendant takes strong issue with the "opportunity to inspect" argument made by plaintiff. Defendant argues that despite the admissions made by plaintiff that defendant was *never* provided with an opportunity to examine or inspect the vehicle prior to plaintiff's granting permission to the insurance company to scrap the vehicle, nevertheless, as in all product liability actions, after defendant was made aware of this action, an investigation was conducted to ascertain if the vehicle existed. Defendant submits the affidavit of William B. Seaton, who was employed by defendant and its attorneys to ascertain if the vehicle existed.

In that affidavit, Seaton states that on September 13, 1993, he inspected the remains of the vehicle which is the subject of this litigation. He states that the vehicle was at a junkyard in Wilkes–Barre, Pennsylvania. Seaton states that only portions of the vehicle remained, that is, the engine compartment, the left front wheel, the dashboard and the front floorboard. Seaton notes specifically that the windshield of the vehicle was missing, as were all of the seat belts. Seaton states that the complete interior of the vehicle is missing as well as the rear portion of the vehicle. Seaton states that he took twenty-two photographs of the vehicle, copies of which are appended to his affidavit, which reflect the state of the vehicle at the time of his inspection.

Defendant argues, and properly so, the pictures indicate that all that was left of the vehicle was a "shell or hulk". The windshield that plaintiff claims he "went through" was not available and all of the seat belts in the vehicle had been removed. Moreover, all of the seats in the car were gone. Indeed, very little remains of the vehicle.

Plaintiff has not requested permission to file a sur response to the new matter (affidavit and pictures) in the reply, see Rule 7.7 M.D.Pa., and thus are undisputed.

To be successful in a products liability suit, plaintiff must prove the product was defective and that the defect in the product caused plaintiff's injuries. Further, he must prove the defect in the product existed at the time the defect left Honda's control. *Roselli v. General Elec. Co.*, 410 Pa.Super. 223, 599 A.2d 685 (1991). As can be seen from the foregoing, there is no real dispute as to the facts which establish that due to plaintiff's "spoliation" of the evidence, he will not be able to prove, by direct evidence, that there was a defect and in addition, has deprived the defendant of an opportunity to defend.

In *Roselli*, supra, the court affirmed the trial court's grant of summary judgment in a case in which a woman claimed to have been injured by a defective coffee machine carafe that exploded in her hand. The fragments of the carafe were lost by plaintiffs and their former attorney and General Electric, the manufacturer, was not able to examine it in

order to prepare its defense. The Superior Court held that summary judgment was appropriate, citing *Martin and Greenspan v. Volkswagen of America,* No. 88–8261, 1989 W.L. 81296 (E.D.PA July 13, 1989) (unpublished). In that case, a woman claimed that she was injured by a defective automobile accelerator. However, the plaintiff sold the automobile before filing her complaint so that it was unavailable for the defendant to inspect and the court therefore entered summary judgment.

In affirming the grant of summary judgment, the *Roselli,* court held that where plaintiff's loss or destruction of important evidence precluded the defendant from examining the product, public policy required summary judgment in the defendant's favor:

> To permit claims of defective products where a purchaser of the product has simply thrown it away after an accident, would both encourage false claims and make legitimate defense of valid claims more difficult. It would put a plaintiff (or plaintiff's attorney) in the position of deciding whether the availability of the item would help or hurt his or her case. Where producing the product for defense inspection would weaken rather than strengthen a case, we unfortunately are obliged to conclude that some plaintiffs and attorneys would be unable to resist the temptation to have the product disappear.

See also *Deweese v. Anchor Hocking,* 427 Pa.Super. 47, 628 A.2d 421 (1993); *Sipe v. Ford Motor Co.,* 837 F.Supp. 660 (M.D.Pa. 1993).

Under the undisputed facts in the instant action, defendant is entitled to summary judgment. Although the vehicle was more than three (3) years old and had more than 90,000 miles on it, according to plaintiff he did not notice any problem with the seat belt until approximately a month before the accident. Within two (2) days after the accident he had formed his theory that the seat belt had a defect because it malfunctioned and in preparation for possible litigation, plaintiff and his wife videotaped the injuries to himself and the damage to the vehicle to show purported damage to the windshield where plaintiff believes his head struck after driving into the pole. However, while conducting this inspection of the car and while videotaping the car plaintiff did not inspect the seat belt for marks or other indications that the seat belt may have grabbed upon impact, nor did plaintiff take any pictures. of the seat belt. Plaintiff did not take nor is he aware of anyone taking any still photographs of the vehicle. He was not aware of any expert examining the vehicle after the accident and did not call in his own expert. Yet, he authorized the insurance company to "junk" the vehicle.

Thus, not only will plaintiff be unable to prove by direct evidence that the seat belt mechanism was defective, but also plaintiff has thus deprived the defendant of the opportunity to properly defend this case. As defendant argues, an inspection of the interior compartment of the vehicle might have permitted Honda to observe if plaintiff had in fact been wearing a seat belt as he asserts. The seat cushion needed to be examined to determine if any deformation existed which would indicate if the seat assisted in the deceleration process during the collision sequence. Also, the seat adjustor assembly needed to be inspected to ascertain if it deformed under load during the deceleration process as it normally does when an occupant is restrained. Also the interior compartment—the headliner, visor, header, instrument panel, steering wheel, and "A" pillar—may have indicated deformations, indentations, hair, blood, skin or other evidence that would suggest occupant kinematics upon impact and reflect whether plaintiff was wearing a seat belt as he alleges. Also the windshield that plaintiff alleges to have gone through may have yielded evidence by the configuration of the deformation in damage that the plaintiff was an unrestrained driver—or if the damage as alleged by plaintiff to the windshield was even caused by his head striking it. The seat belt webbing, the "D" ring, and the footman's loop needed to have been examined for marks made by belt loading. The seat belt latch would also possess evidence of repetitive engagements with the buckle to verify if plaintiff was indeed a habitual user of his seat belt.

The above components could not be inspected because when Honda caught up with the car, it was "junk" with all of those components missing. Plaintiff authorized this disposal. Not only has plaintiff prevented the defendant from examining these components to determine whether there was a defect, but also plaintiff can offer no direct evidence of a defect. Since whether or not there is a defect is an issue on which plaintiff would carry the burden of proof at trial, Honda is entitled to summary judgment.

However, as previously noted, plaintiff argues that although he cannot establish a defect by direct evidence due to the loss or destruction of the evidence, he can establish a defect by *circumstantial* evidence through his testimony of malfunction corroborated by videotaped pictures of his injuries, the car's windshield and the hospital records. (Doc. No. 20, pp. 4, 5, 7, 8). For this he relies on *Troy v. Kampgrounds of America, Inc.*, 399 Pa.Super. 41, 581 A.2d 665 (1990).

Under Pennsylvania law, proof of a specific defect in the construction or design of a product causing a malfunction is not always essential for product liability. *MacDougall v. Ford Motor Company*, 214 Pa.Super. 384, 257 A.2d 676 (1969). However, in *Roselli*, supra, the court distinguished *Troy* on the basis that in *Troy*, although plaintiffs and defendants did not have an opportunity to examine the appliances, other experts had done so and therefore their testimony was for the jury. The *Roselli* court noted that *Troy* is analogous to criminal cases when tests had been conducted on evidence which was lost or destroyed before trial, but still may be admitted at trial, permitting the case to go to the jury.

The *Roselli* court noted, however, that in the case before it (as in the instant case) neither the parties, nor any experts ever had the opportunity to examine the carafe because plaintiffs lost the product before examination could occur. The *Roselli* court noted that although plaintiff may use circumstantial evidence to establish a defective product, one form of circumstantial evidence is the occurrence of a product malfunction along with evidence eliminating abnormal use or reasonable secondary causes for the malfunction.

The *Roselli* court noted under the malfunction theory the plaintiffs had the burden of negating reasonable secondary causes for the accident which are fairly raised by the evidence. The court noted that on the other hand, defendants do not have to prove the existence of secondary causes for the accident or abnormal use of the product. Their burden is only to identify other possible non-defect oriented explanations. The *Roselli* court cited authority for the proposition that where an explanation consistent with the existence of a defect is as probable as an explanation inconsistent with the existence of a defect, the plaintiff cannot be held to have met his burden. The jury may not be permitted to speculate. It was also noted that it is the duty of the trial court to determine whether or not this requirement has been met in the first instance before the issue can be submitted to the jury.

In response to plaintiff's theory of malfunction which is supported basically by only his own testimony, Honda asserts that it is equally likely that plaintiff's injuries occurred as a result of other equally plausible causes; i.e., plaintiff was not wearing a seat belt on the night of the accident; that plaintiff's seat cushion that he placed under his seat may have fouled the seat belt mechanisms from properly engaging even if plaintiff was wearing his seat belt; or that plaintiff's own handling, misuse, abuse or neglect of the product prior to the accident prevented the seat belt from operating properly if plaintiff, in fact, had it on at the time of the accident.

Thus, on the present record, a jury could only speculate as to the cause of plaintiff's injuries. Since plaintiff cannot prove the defect either by direct or circumstantial evidence, the defendant is entitled to summary judgement.

An appropriate order will issue.