**Louann WALTERS, as parent and natural guardian of Mark WALTERS, and Mark Walters, individually, Plaintiffs,**

v.

**GENERAL MOTORS CORPORATION, Defendant.**

No. CIV.A. 00–1439.

United States District Court,
W.D. Pennsylvania.

April 11, 2002.

Carmen F. Lamancusa, Lamancusa & Cilli, New Castle, PA, for Plaintiff.

Thomas J. Sweeney, Daniel B. McLane, Eckert Seamans, Cherin & Mellott, Pittsburgh, PA, for Defendant.

## OPINION

DIAMOND, District Judge.

Plaintiffs commenced this personal injury action seeking monetary damages for injuries sustained by Mark Walters in a single motor vehicle accident. Plaintiffs contend defendant is liable for those injuries based upon a manufacturing defect in the air bag safety restraint system installed in the vehicle. The defect was the failure of the air bag to deploy in a "near frontal" crash, causing Mr. Walters to sustain serious head injuries. Presently before the court is defendant's motion for summary judgment. For the reasons set forth below, the motion will be granted.

Fed.R.Civ.P. 56(c) provides that summary judgment may be granted if, drawing all inferences in favor of the non-moving party, "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." Summary judgment may be granted against a party who

fails to adduce facts sufficient to establish the existence of any element essential to that party's claim, and upon which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party bears the initial burden of identifying evidence which demonstrates the absence of a genuine issue of material fact. When the movant does not bear the burden of proof on the claim, the movant's initial burden may be met by demonstrating the lack of record evidence to support the opponent's claim. *National State Bank v. Federal Reserve Bank,* 979 F.2d 1579, 1582 (3d Cir.1992). Once that burden has been met, the non-moving party must set forth "specific facts showing that there is a *genuine issue for trial,*" or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (*quoting* Fed.R.Civ.P. 56(a), (e)) (emphasis in *Matsushita*). An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In meeting its burden of proof, the "opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The non-moving party "must present affirmative evidence in order to defeat a properly supported motion" and cannot "simply reassert factually unsupported allegations." *Williams v. Borough of West Chester,* 891 F.2d 458, 460 (3d Cir.1989). Nor can the opponent "merely rely upon conclusory allegations in [its] pleadings or in memoranda and briefs." *Harter v. GAF Corp.,* 967 F.2d 846 (3d Cir.1992). Likewise, mere conjecture or

speculation by the party resisting summary judgment will not provide a basis upon which to deny the motion. *Robertson v. Allied Signal, Inc.,* 914 F.2d 360, 382–83 n. 12 (3d Cir.1990). If the non-moving party's evidence merely is colorable or lacks sufficient probative force summary judgment must be granted. *Anderson,* 477 U.S. at 249–50, 106 S.Ct. 2505; *see also Big Apple BMW, Inc. v. BMW of North America,* 974 F.2d 1358, 1362 (3d Cir.1992), *cert. denied,* 507 U.S. 912, 113 S.Ct. 1262, 122 L.Ed.2d 659 (1993) (although court is not permitted to weigh facts or competing inferences, it is no longer required to "turn a blind eye" to the weight of the evidence).

Plaintiffs contend that a strict product liability claim may be maintained on the ground that a supplemental inflatable restraint system (i.e., a driver's side air bag) failed to deploy in a 1996 Chevrolet Blazer when Mark Walters lost control of it and crashed into a hillside on May 17, 1998. The Blazer was manufactured by defendant and purchased by Louann Walters as new from a Youngstown, Ohio, dealership. The vehicle was equipped with a driver's side air bag and the owner's manual provided the following pertinent description of the manner in which it was intended to operate:

> The air bag is designed to inflate in moderate to severe frontal or near-frontal crashes. The air bag will inflate only if the impact speed is above the system's designed "threshold level." If your vehicle goes straight into a wall that does not move or deform, the threshold level is about 14 to 18 mph (23–29 km/h). The threshold level can vary, however, with specific vehicle design, so that it can be somewhat above or below this range. If your vehicle strikes something that will move or deform, such as a parked car, the threshold level will be higher. The air bag is not designed to

inflate in rollovers, side impacts or rear impacts, because inflation would not be helpful to the occupant.

Exhibit C to Plaintiffs' Response to Defendant's Motion for Summary Judgment (Document No. 17). The owner's manual further explained inflation of the air bag would restrain the driver from striking the steering wheel by distributing the driver's forward momentum more gradually. It then noted in contrast: "But air bags would not help you in many types of collisions, including rollovers, rear impacts and side impacts, primarily because an occupant's motion is not toward the air bag." *Id.* It also indicated the Blazer was equipped with a diagnostic module designed to record information about the air bag system, including information about the readiness of the system, when the sensors are activated and the driver's safety belt usage at deployment. *Id.*

The record as read in the light most favorable to plaintiffs will support the following scenario. At 8:30 p.m. on May 17, 1998, Mark Walters was operating the 1996 Blazer and traveling north on State Route 1006 in Washington Township, Lawrence County, Pennsylvania. He was restrained by the seatbelt. Mr. Walters lost control of the vehicle and traveled off the roadway onto the east berm. In attempting to return to the roadway, Mr. Walters veered to the left and crossed the center line into the southbound lane. He then veered back into the northbound lane and onto the east berm, colliding into a hillside, causing the vehicle to roll onto its roof and come to a final stop 5 feet from the east berm of the roadway. The Blazer sustained damage to the right front fender and right side of the hood, and extensive damage to the driver's side front wheel and undercarriage directly below the driv-

er's side door. The air bag did not deploy. Mr. Walters suffered head injuries as a result of the accident.

Immediately following the accident Mr. Walters was life flighted to Allegheny General Hospital. He suffered closed head injuries, including two contusions to the brain, and was comatose for several days. Upon awakening Mr. Walters required rehabilitation and retraining in walking, talking and writing. He experienced chronic headaches, double vision and permanent speech impairment. He remained hospitalized until May 22, 1998, when he was transferred to an inpatient rehabilitation center. He remained in the center until July 6, 1998, and thereafter continued to receive outpatient therapy until August 12, 1998. Since that time Mr. Walters has been under the care of two treating physicians who have placed him on anti-seizure medication and monitored his condition.

Mr. Walters has no actual recollection of the accident. *See* Exhibit B to General Motors' Motion for Summary Judgment (Document No. 13). His memory of the evening in question ends shortly before the accident occurred. There are no known witnesses to the accident itself. The information concerning the sequence of events compromising the accident primarily are derived from the accident report of the investigating police officer. *Id.* at 20. Plaintiff is unable to identify what portion of the vehicle his head struck during the course of the accident. *Id.* at 21.

Following the accident the Blazer was "totaled" by Louann Walters' first-party insurance carrier. As a result the vehicle subsequently was destroyed prior to the plaintiffs contacting an attorney.[1] Defendant thus was never provided with an op-

---

1. The record does not indicate with any further detail how the vehicle was destroyed. Apparently, Ms. Walters transferred title of the Blazer to the insurance carrier and it sold the vehicle to a salvage yard or similar third-party who dismantled the vehicle.

portunity to examine the product which plaintiffs claim was defective.

Among other grounds, defendant contends it is entitled to summary judgment because plaintiffs have failed to come forward with sufficient evidence to sustain their burden of proof at trial on the essential elements of a strict products liability claim. In its motion for summary judgment and initial brief in support defendant points out that plaintiffs have not filed a pretrial narrative statement nor proffered the reports of any experts. It further observes that plaintiffs are not seeking to establish that the alleged defect caused the accident, but instead are apparently contending that Mr. Walters sustained enhanced injuries because the driver's side air bag did not deploy. It asserts plaintiffs lack evidence to prove a specific design defect in the air bag and similarly have failed to advance expert testimony to support the contention that Mr. Walters sustained enhanced injuries because the air bag did not deploy. From its perspective plaintiffs' failure to identify an expert precludes the existence of a design defect at trial, or the proffering of a safer alternative design, elements which plaintiffs are required to prove in order to establish a design defect claim. Plaintiff' failure to offer a report from a "biomechanical" or similar expert similarly precludes any claim that enhanced injuries were sustained because the vehicle was not crash worthy.

In response plaintiffs acknowledge that they have no expert testimony to offer and argue that they can sustain their burden of proof at trial under the malfunction theory of product liability as recognized by Pennsylvania law, which permits the jury to infer the existence of a defect under special circumstances. They argue that the testimony of Louann Walters, Mark Walters and the investigating state police officer coupled with photographs of the vehicle taken after it was removed from the scene of the accident are sufficient to permit the jury to infer that there was a frontal or near frontal impact of sufficient speed to trigger the activation of the air bags and that they failed to deploy during the accident. Plaintiffs also contend that the malfunctioning of the air bags and Mr. Walters' testimony that he was wearing his seatbelt are facts from which the jury can infer that his closed head injuries were caused entirely by the failure of the air bag to deploy.

In its reply defendant argues forcefully that plaintiffs cannot satisfy their lesser burden of proof under a malfunction theory. In addition, defendant reiterates that plaintiffs' response does not offer any expert report or factual basis to satisfy plaintiffs' burden of demonstrating that Mr. Walters sustained enhanced injuries as a result of the alleged defect.

To recover under Pennsylvania law pursuant to a strict product liability theory, a plaintiff generally must prove that (1) the product was defective; (2) the defect was the proximate cause of the plaintiff's injuries; and (3) the defect existed at the time it left the manufacturer's control. *Woodin v. J.C. Penney Co.*, 427 Pa.Super. 488, 629 A.2d 974, 975 (1993). In those cases where the plaintiff is unable to produce direct evidence of a product's defective condition and thus the precise nature of the product's defect, the plaintiff may, in appropriate cases, rely on the "malfunction theory" of product liability. *Id.* (*citing Rogers v. Johnson & Johnson Products, Inc.*, 523 Pa. 176, 565 A.2d 751, 754 (1989)). This theory permits the plaintiff to prove a defect through circumstantial evidence. Plaintiff may raise a supportable inference of defect through (1) evidence of the occurrence of a malfunction and (2) evidence eliminating abnormal use and (3) evidence eliminating reasonable,

secondary causes for the accident. *Id.* If such evidence is present the plaintiff is relieved from demonstrating the precise defect in the product and the trier of fact is permitted to infer the existence of a defect from the malfunction and the negation of abnormal use and other reasonable secondary causes. In pursuing this theory the plaintiff cannot depend upon conjecture, speculation or guesswork to meet these evidentiary requirements because "the mere fact that an accident happens, even in this enlightened age, does not take the injured plaintiff to the jury." *Id.* at 976 (citations omitted).

▆▆▆▆ Establishing a prima facie case under a malfunction theory does not require a plaintiff to proffer expert testimony to prove how the product was defective or how the defect arose as a result of actions taken by the manufacturer or seller. *Dansak v. Cameron Coca–Cola Bottling Co., Inc.,* 703 A.2d 489, 496 (Pa.Super.1997). Instead, a plaintiff may sustain his burden without articulating a specific defect by producing (1) circumstantial evidence of a malfunction and (2) evidence indicating (a) the product was being used as intended or reasonably expected and (b) the absence of other reasonable secondary causes. *Altronics of Bethlehem, Inc. v. Repco, Inc.,* 957 F.2d 1102, 1105 (3d Cir. 1992); *Dansak,* 703 A.2d at 496. An array of circumstantial evidence may be used to prove the existence of a defect pursuant to this method, including:

1) The malfunction of the product;
2) Expert testimony as to a variety of possible causes;
3) The timing of the malfunction in relation to when the plaintiff first obtained the product;
4) Similar accidents involving the same product;
5) Elimination of other possible causes of the accident; and,

6) Proof tending to establish that the accident does not occur absent a malfunctioning defect.

*Dansak,* 703 A.2d at 496 (*citing* Litvin & McHugh, Pennsylvania Torts: Law & Advocacy (1996) § 9.33). A malfunction theory does not relieve the plaintiff of the burden of establishing a defect, but instead permits the malfunction itself to serve as circumstantial evidence of a defective condition provided the remaining evidence is sufficient to support the other elements. *Id.* (*citing D'Antona v. Hampton Grinding Wheel Co., Inc.,* 225 Pa.Super. 120, 310 A.2d 307, 309 (1973)).

▆▆▆▆ In order to proceed to the jury on a malfunction theory the plaintiff is required to proffer evidence that if credited negates any reasonable secondary causes of the accident. The Supreme Court of Pennsylvania has endorsed a liberal approach in meeting this requirement and permitted a plaintiff to reach the jury if he presents "a case-in-chief free of secondary causes." *Rogers v. Johnson & Johnson Products, Inc.,* 523 Pa. 176, 565 A.2d 751, 755 (1989). Under this theory the plaintiff need not negate every theoretically conceivable secondary cause for the accident in question; rather, the plaintiff fails to establish a prima facie case only where the offered proof in itself fairly raises the possibility of secondary causes and then fails to negate the inference that more than one cause could account for the accident. *Dansak,* 703 A.2d at 497. In other words, "[s]ummary judgment is not warranted simply because the defendant hypothesizes (or even presents evidence of) reasonable secondary causes." *Id.* at 497. Instead, it is appropriate only where "based upon [the plaintiff's] own proof, more than one cause could account for the accident." *Id.* (*quoting Schlier v. Milwaukee Electrical Tool Corp.,* 835 F.Supp. 839, 841 (E.D.Pa.1993)); *Hamilton v. Emerson*

*Electric Co.,* 133 F.Supp.2d 360, 366 (M.D.Pa.2001) (a plaintiff need not actively eliminate all reasonable secondary causes, but only is required to present a case-in-chief that contains no evidence of reasonable secondary causes or negates any such cause that initially arises).

■ Plaintiffs have failed to come forward with sufficient evidence to support any theory of liability they advance against defendant. The gravamen of plaintiffs' claim is that the driver's side air bag failed to deploy in a "near frontal collision." Plaintiffs merely allege that the Blazer collided "into a hillside with the right frontal portion and passenger side of [the] vehicle, causing the vehicle to roll onto its roof and come to a final resting place 5 feet from the east berm of the roadway." Plaintiffs have offered no competent evidence to support a finding by a preponderance of the evidence that the Blazer was involved in a frontal or near frontal crash. It is undisputed that the air bag was not designed to deploy in a rollover or side impact accident. The owner's manual placed plaintiffs on notice of the conditions required to bring about deployment of the air bag—a 14 to 18 mph crash into a stationary and non-deforming object—and plaintiffs have come forward with no evidence to support a finding that the accident in question involved this type of frontal or near-frontal crash. Plaintiffs' description of the accident in itself demonstrates a substantial likelihood that the accident primarily consisted of right side impact followed by a rollover. Plaintiffs have offered no testimony from an accident reconstruction expert to support their theory that there was significant frontal or near-frontal impact. Mr. Walters has no recollection of the specific events that occurred during the accident. The pictures of the Blazer proffered by plaintiffs are not accompanied by a report from an accident reconstruction expert and merely identify modest damage to the right front fender and hood of the Blazer, with extensive damage to the driver's side front wheel and undercarriage beneath the driver's side door. No extensive impact to the front bumper or grill is apparent. Without further explanation or analysis, the pictures lack the probative value necessary to support a finding that moderate or severe frontal or near-frontal impact occurred. In short, reasserting bald allegations from the compliant does not factually support the proposition that a frontal or near-frontal crash occurred and the mere assertion that it does is not a basis upon which to deny defendant's motion for summary judgment.

Moreover, even assuming *arguendo* that the record somehow contains sufficient evidence from which a circumstantial finding can be made that some form of near-frontal impact occurred, plaintiffs have failed to produce evidence to support a finding that the "threshold level" of impact for air bag deployment was met or exceeded during the course of the accident. Plaintiffs' assertion that the velocity and resistance involved in the accident were sufficient to trigger deployment of the air bag is rank speculation and conjecture. Plaintiffs have offered no evidence, testimony or expert report to establish the likely speed of the Blazer and force of resistance at the moment of impact, and plaintiffs cannot produce such testimony because it is undisputed that the vehicle was destroyed before an expert for either party was able to examine it. Given the lack of detailed facts concerning the sequence of events that occurred during the accident and the inability to clarify or further develop the available facts, it is clear that plaintiffs as a matter of law cannot meet their evidentiary burden of proving that the threshold level of impact was met or exceeded. The inability to produce competent and adequate evidence to support a finding that the air bag should have

deployed during the accident is fatal to any form of product liability or negligence claim advanced by plaintiffs.

Plaintiffs' reliance on the malfunction theory to establish a defect in the air bag system of the Blazer is unavailing for additional reasons as well. While the malfunction theory permits a plaintiff to employ an alternative method of proving a defect, it does not relieve the plaintiff of the burden of establishing an actual defect. *Harkins v. Calumet Realty Co.,* 418 Pa.Super. 405, 614 A.2d 699, 706 (1992). As explained above, summarily alleging without record support that the air bag should have deployed during the accident falls woefully short of proving the malfunction of non-deployment. Furthermore, plaintiffs' evidence in support of their theory of malfunction, even when read in the light most favorable to plaintiffs, raises the equally plausible explanation that the accident primarily consisted of a side impact and rollover and/or did not involve a near-frontal impact that was sufficient to meet the threshold level for deployment. Given the undisputed facts of record a reasonable jury cannot be permitted to make a finding that the air bag system of the Blazer was defective at the time it was placed into interstate commerce by defendant because other reasonable secondary causes for the alleged malfunction actually are introduced by plaintiffs' case-in-chief and the entirety of plaintiffs' evidentiary proof is not capable of negating these reasonable secondary causes for the non-deployment. Under these circumstances plaintiffs' reliance on the malfunction theory is misplaced.

Plaintiffs' evidence also is insufficient to support liability under any alternative product liability or negligence claim. Plaintiffs have failed to come forward with any evidence of a design defect in the air bag system. And other than the misguided application of the malfunction theory discussed above they similarly have failed to come forward with any evidence of a breach of duty by defendant. They likewise have failed to come forward with any expert testimony to support the proposition that Mr. Walters' head injuries would not have occurred but for the non-deployment of the air bag, and/or that he suffered enhanced injuries as the result of the non-deployment. As noted by defendant, such theories of injury involve a technical and advanced understanding of biomechanics, medical causation and engineering principles far beyond the knowledge of the average layperson. In combination these deficiencies make clear that plaintiffs cannot proceed with any theory advanced in their complaint.

■ Defendant raised a number of the grounds advanced in support of its motion for summary judgment in an earlier filed motion to dismiss. Plaintiffs contend that in response to the motion to dismiss they requested additional time to obtain expert testimony to bolster the circumstantial evidence in the record relative to their claims. *See* Plaintiffs' Response to Motion for Summary Judgment (Document No. 17) at 4. But plaintiffs' memorandum in opposition to defendant's motion to dismiss primarily highlights plaintiffs' reliance on the malfunction theory and their purported ability to proceed on the circumstantial evidence of record without any expert testimony. Plaintiffs summarized their position as follows:

> Under Pennsylvania law a prima facie case of product liability under the malfunction theory does not require expert testimony explaining how the product was defective or how the defect arose from the manufacturer or seller; even without articulating a specific [defect], a plaintiff may sustain his burden of producing circumstantial evidence of a defect.

In the instant case, plaintiffs have alleged that the vehicle was defective in that the [air bag] system failed to deploy resulting in plaintiff's injuries. The lay testimony establishes that this was a near frontal impact in which case air bags should have deployed. Also, there is testimony that the air bags were not deployed after the accident. Therefore, there is no prejudice in the defendant being unable to inspect the vehicle since plaintiffs may prove their case through circumstantial evidence of malfunction of the product.

Plaintiffs' Memorandum in Opposition to Defendant's Motion to Dismiss (Document No. 15) at 11–12. After defendant again raised the deficiencies in plaintiffs' prima facie case through a motion for summary judgment, plaintiffs reiterated their intent to proceed pursuant to a malfunction theory and without the use of expert testimony.

Plaintiffs' response in opposition to defendant's motion for summary judgment was filed on February 22, 2002, over ninety days after defendant first challenged plaintiffs' ability to proceed with their case without any identified experts. Plaintiffs have had more than sufficient time to procure the use of an accident reconstruction expert, an air bag design expert or a biomechanical injury expert. They have elected not to do so and opted to proceed on a malfunction theory. That theory is unavailing under the circumstances. Sanctioning plaintiffs' "wait and see" approach to the use of experts at this juncture would make a mockery out of this court's pretrial orders and local rules and prejudice defendant by adding additional unwarranted delay to the progression of the case. It follows that defendant is entitled to summary judgment without further delay.

An alternative basis for granting defendant's motion for summary judgment also is established in the record. Defen-

dant initially moved to dismiss plaintiffs' action on the grounds that plaintiffs had failed to file a pretrial narrative statement or deliver the reports of any experts in accordance with this court's case management order. In that motion defendant highlighted the destruction of the Blazer and argued that it was prejudiced because it had been precluded from performing any inspection and/or analysis of the vehicle or the air bag system for the purpose of preparing a defense. Defendant further highlighted plaintiffs' failure to file a pretrial narrative statement, exhibit list and witness list. Defendant asserted it was unable to identify the purported testimony and/or allegations of defect and the plaintiffs' failure to disclose the underpinnings of their case was creating unfair prejudice. Plaintiffs responded to the motion by, *inter alia*, outlining the factual scenario set forth above and arguing that dismissal of the case was inappropriate under Pennsylvania law governing the spoliation of evidence. Pennsylvania law governing the spoliation of evidence thus has been briefed fully by both parties.

Where material evidence has been suppressed without the opposing party having an opportunity to inspect and/or test it, the issue arises as to whether sanctions should be imposed under Pennsylvania's "spoliation of evidence doctrine." *See generally Sebelin v. Yamaha Motor Corp., USA,* 705 A.2d 904, 907–11 (Pa.Super.1998) (outlining development of the doctrine in Modern Pennsylvania Jurisprudence). Appropriate sanctions include summary judgment on or the outright dismissal of claims, the exclusion of countervailing evidence, or a jury instruction on the spoliation inference. *Howell v. Maytag,* 168 F.R.D. 502, 505 (M.D.Pa.1996). Three key factors are to be considered in determining whether any of these sanctions is appropriate: (1) the degree of fault and personal

responsibility of the party who lost or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) the availability of lesser sanctions that will avoid substantial unfairness to the opposing party and, where the offending party seriously is at fault, will serve to deter such conduct by others in the future. *Schmid v. Milwaukee Electric Tool Corp.,* 13 F.3d 76, 79 (3d Cir.1994). The willfulness of the destructive act and the prejudice suffered by the opposing party are the paramount concerns in conducting the analysis. *Id.*

A balancing of the pertinent factors supports the sanction of summary judgment in defendant's favor. First, the Blazer was under Ms. Walters' control after the accident. While she likely did not appreciate the significance of permitting the insurance company to dispose of the vehicle at the time her authorization to do so was obtained, the circumstances do not present a situation where the allegedly defective product has been lost or destroyed through no fault of the plaintiff. In *Roselli v. General Electric Co.,* 410 Pa.Super. 223, 599 A.2d 685 (1991), the court emphasized the important public policy considerations that must be considered whenever the plaintiff had control over the allegedly defective product and subsequently failed to produce it for inspection. It opined:

> To permit claims of defective products where a purchaser of the product has simply thrown it away after the accident, would both encouraged false claims and make legitimate defense of valid claims more difficult. It would put a plaintiff (or plaintiff's attorney) in the position of deciding whether the availability of the item would help or hurt his or her case. Where producing the product for defense inspection would weaken rather than strengthen a case, we unfortunately are obligated to conclude that some plaintiffs and attorneys would be

unable to resist the temptation to have the produce disappear.

*Id.* at 687–88. While the Superior Court has emphasized in subsequent cases that a plaintiff's control of the lost product is not a dispositive factor in applying the doctrine, it remains a very important factor in the analysis. *Sebelin,* 705 A.2d at 907 n. 2. Because plaintiffs had control over the Blazer after the accident and had the ability to preserve it, this factor weighs in favor of defendant's request for relief.

Defendant has been prejudiced significantly by the loss of the Blazer. Plaintiffs do not seek to establish liability by a design defect common among all 1996 Blazers, but instead seek to impose liability based upon a single manufacturing defect in the Blazer owned by Ms. Walters. In *O'Donnell v. Big Yank, Inc.,* 696 A.2d 846 (Pa.Super.1997), the court emphasized that the prejudice to a defendant in a single defect case generally is much more severe than in a design defect case because the spoiled product is forever lost and there is no way to test the particular product for the alleged defects. Nor is there any way to test for evidence reflecting abnormal use or reasonable secondary causes. In such circumstances Pennsylvania case law generally recognizes that summary judgment is appropriate under the circumstances. *See Roselli,* 599 A.2d at 687 (destruction of glass carafe precluded manufacturing defect claim because the plaintiff could not prove that the malfunction occurred in the absence of abnormal use or reasonable secondary causes and the defendant was materially hampered due to the inability to conduct examination and expert testing on the particular carafe in question); *Tenaglia v. Proctor & Gamble, Inc.,* 737 A.2d 306, 309 (Pa.Super.1999) (destruction of cardboard box forming the basis for a manufacturing defect warranted summary judgment for the defendant because "[w]hen pursuing a cause of action for a manufacturing defect,

the preservation of the product is even more critical than when pursuing an action on the basis of a design defect" and the defendant was prejudiced severely by the inability to examine the product in order to determine the cause, nature, and extent of the alleged defect). And the courts have recognized that the resulting prejudice particularly is severe where the alleged manufacturing defect involves a safety device in an automobile. *See Smith v. American Honda Motor Co., Inc.*, 846 F.Supp. 1217, 1222–23 (M.D.Pa.1994) (spoliation of vehicle alleged to contain manufacturing defect in seat belt system caused severe prejudice to defendant by eliminating any opportunity to examine and test multiple components of the vehicle that would have a bearing on the accuracy of the plaintiff's allegations and also precluded the plaintiff from offering direct evidence of a defect or indirect evidence eliminating the equally consistent explanation that secondary causes for the accident or abnormal use of the seat belts resulted in the plaintiff's injuries); *Schwartz v. Subaru of America, Inc.*, 851 F.Supp. 191, 193 (E.D.Pa.1994) (same); *Martin v. Volkswagen of America, Inc.*, 1989 WL 81296 (E.D.Pa.1989) (disposal of vehicle forming basis of defective product claim brought under malfunction theory caused severe prejudice to the defendant by depriving it of an opportunity to examine and test the vehicle, thereby warranting summary judgment in the defendant's favor).

Here, the destruction of the Blazer effectively precludes defendant from refuting plaintiffs' allegations. It precludes defendant from examining and testing the component parts of the vehicle to determine whether the air bag was defective or had been subject to misuse or whether there were reasonable secondary causes that would account for its non-deployment. It also deprives defendant of the ability to test the veracity of Mr. Walters' contention that he was wearing his seat belt through the information contained in the diagnostic module. It is difficult to imagine a situation where a defendant could be more prejudiced by the spoliation of evidence within the plaintiff's control.[2] It

---

**2.** The inherent prejudice to defendant resulting from the destruction of the Blazer stands in stark contrast to the situation that arose in *Dansak.* There, the plaintiff alleged that she suffered a severe laceration to one of her fingers in the process of unpacking six-packs of bottled Coca–Cola contained in a carton shipped by the manufacturer. After noticing she had been cut, the plaintiff sought medical attention and immediately was hospitalized. Before the plaintiff returned to work the store manager threw away the carton and the six-pack, including the broken bottle. The plaintiff did not notice the presence of any broken glass or spilled liquid in the cardboard box containing the shipped six-packs. The plaintiff contended her injuries were caused by a manufacturing defect that resulted in a broken bottle being contained within one of the six-packs. The plaintiff presented a case-in-chief free of abnormal use or reasonable secondary causes by testifying that she was the only individual to unpack the cartons at the store, the cardboard box containing the six-packs remained unopened until the time of her injury and there was no evidence of mishandling by any other individual. The defendant contended the box had been stored for an undetermined period of time in an area where other persons could have had access to it. Defendant thus contended that another individual could have mishandled the box, causing the bottle to break during the process. The Superior Court of Pennsylvania permitted the plaintiff to proceed on a malfunction theory primarily because "the nature of the defect was such that an examination of the broken bottle was not necessary to defend the claim [and][t]he defect was simply the existence of the broken bottle, when it left the manufacturer." *Tenaglia,* 737 A.2d at 309. In other words, examining and testing the bottle would not have had any bearing on the accuracy of either parties' contentions. Such a situation is distinguishable from one where "the nature of the defect involved" precludes the defendant from rebutting the plaintiff's allegations without examining the product.

follows that this factor weighs heavily in defendant's favor as well.

Finally, it readily is apparent that summary judgment is the only appropriate sanction available to the court. Any lesser sanction would inadequately enforce the important policy considerations underlying the spoliation doctrine and would fail to address the substantial prejudice that defendant would face if it was required to defend against plaintiffs' claims. Accordingly, summary judgment is warranted on this ground as well.

For the reasons set forth above, defendant's motion for summary judgment will be granted.

An appropriate order will follow.

### ORDER OF COURT

AND NOW, this 11th day of April, 2002, for the reasons set forth in the opinion filed this day, IT IS ORDERED that defendant's motion for summary judgment (Document No. 13) be, and the same hereby is, granted.

*Id.* The destruction of the Blazer prejudiced defendant precisely in this manner.