Rowan **PARKINSON,** and Rowan Parkinson, as Executor of the Estate of Shirley Lee Parkinson a/k/a Shirley L. Parkinson a/k/a Shirley Parkinson, Deceased, Plaintiffs,

v.

**GUIDANT CORPORATION and/or Advanced Cardiovascular Systems, Inc., Defendants.**

No. CIV.A.01–1330.

United States District Court, W.D. Pennsylvania.

March 22, 2004.

Louis M. Tarasi, Jr., Esq., Tarasi, Tarasi & Fishman, P.C., Pittsburgh, PA.

Nina M. Gussack, Esq., Barry H. Boise, Esq., Sharon DiPaolo, Esq., Pepper Hamilton LLP, Philadelphia, PA.

## MEMORANDUM AND ORDER OF COURT

DIAMOND, District Judge.

This is a products liability case involving a .014 Hi–Torque Balance Middleweight guidewire manufactured by defendant Advanced Cardiovascular Systems, Inc. ("ACS") which fractured during an angioplasty and stent procedure performed on plaintiff Rowan Parkinson on May 11, 1999. Presently before the court is plaintiffs' motion for sanctions for spoliation (Document No. 49). Also before the court is defendants' motion *in limine* to preclude spoliation evidence (Document No. 46). For the following reasons, plaintiffs' motion for sanctions will be denied and defendants' motion *in limine* to preclude spoliation evidence will be granted.

The following facts pertinent to the two pending motions essentially are undisputed unless otherwise noted. On August 29, 2001, counsel for defendants subpoenaed the fractured guidewire used during plaintiff's angioplasty procedure from Shadyside Hospital which had had custody of the guidewire since May 11, 1999, the date of plaintiff's operation.

On October 15, 2001, Shadyside Hospital turned over to defense counsel an envelope marked as containing the guidewire used during plaintiff's procedure. From October 15, 2001, to November 28, 2001, the evidence produced by Shadyside Hospital remained in the possession and control of defendants' counsel.[1] On November 28, 2001, defense counsel turned the evidence over to plaintiffs' counsel. From then until May 13, 2002, the evidence remained in the possession and control of plaintiffs' counsel, when it was returned to defense counsel.[2]

The mystery of the missing guidewire shaft was uncovered on February 9, 2002,

---

1. In response to plaintiffs' Third Set of Interrogatories, defendants identified four individuals who handled the evidence during this period: Sharon DiPaolo, Esq., and her secretary in Pittsburgh, and Barry Boise, Esq., and his legal assistant in Philadelphia. Exhibit D to Defendants' Motion *In Limine*.

2. In response to defendants' Second Set of Interrogatories, plaintiffs identified the following individuals who handled the evidence during this period: Louis Tarasi, Esq., a legal assistant and an office manager at plaintiffs' counsel's law firm in Pittsburgh; Gabriel Alexander, Ronald Lapina and Laura Ellis at

by plaintiffs' expert Ronald Crooks, a metallurgist, who upon inspection of the wire realized that the evidence provided to him by plaintiffs' counsel consisted only of the tip of the fractured guidewire along with a separate, complete guidewire rather than the shaft from the fractured guidewire.

On April 12, 2002, plaintiffs' counsel contacted Shadyside Hospital's counsel regarding the missing shaft. On May 23, 2002, defense counsel advised plaintiffs' counsel that Shadyside Hospital had produced the complete guidewire to them in October 2001, and that defense counsel had not received the fractured shaft.

On July 1,2002, the issue of the lost guidewire shaft was raised with the court and the parties began discovery on the chain of custody. Defendants then filed this pending motion *in limine* to preclude spoliation evidence in anticipation of plaintiffs filing of a motion for sanctions, which plaintiffs subsequently did file. Both motions now are ripe for resolution.

■ The admissibility of spoliation evidence and the propriety of a spoliation inference are well established both under federal evidentiary law and Pennsylvania state law. *Schmid v. Milwaukee Electric Tool Corp.*, 13 F.3d 76, 81 (3d Cir.1994). Under the spoliation doctrine, evidence that one party destroyed evidence relevant to the dispute being litigated is admissible and such evidence permits a spoliation inference that the destroyed evidence would have been unfavorable to the position of the offending party. *Id.*

■ It also is well established that district courts have the authority to sanction a party who destroys or alters relevant evidence, with sanctions ranging from summary judgment and/or outright dis-

missal of claims to the exclusion of countervailing evidence to a jury instruction on the spoliation inference. *Walters v. General Motors Corp.*, 209 F.Supp.2d 481, 490 (W.D.Pa.2002). Whether sanctions are appropriate and the level of sanctions warranted turn on three key factors: (1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and, (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party, and, where the offending party is seriously at fault, will serve to deter such conduct in the future. *Schmid,* 13 F.3d at 79; *Schroeder v. PennDOT,* 551 Pa. 243, 710 A.2d 23, 27 (1998) (expressly adopting *Schmid* factors in determining appropriate sanctions for spoliation in Pennsylvania).

Here, plaintiffs seek sanctions under the spoliation doctrine against defendants for the loss of the fractured shaft of the guidewire used during plaintiff's angioplasty procedure. Plaintiffs aver that consideration of the *Schmid* factors in this case warrants the admission of spoliation evidence and a spoliation inference charge to the jury.

However, the flaw in plaintiffs' position is that before the court can consider the *degree* of fault for spoliation, and any resultant prejudice and appropriate sanctions under *Schmid,* there has to be a showing of fault in the first instance. *See Manson v. SEPTA,* 767 A.2d 1, 5 (Pa. Cmwlth.2001) (spoliation doctrine creates adverse inference against party *responsible* for destruction or withholding of evidence).

■ In this case, there is a very real and material dispute as to who actually

---

Robson Lapina in Cranberry Township; Ronald Crooks in Hockessin, Delaware; and W.E. Gresham and James Ficca at Micron, Inc., in

Wilmington, Delaware. Exhibit G to Defendants' Motion *In Limine.*

lost the guidewire shaft, a dispute that cannot be resolved on the record before the court. There simply is not sufficient evidence in the record to establish definitively that defense counsel, rather than Shadyside Hospital or even plaintiffs' counsel, is responsible for the loss of the fractured shaft.

■ For the spoliation inference to arise, it is essential both that the evidence in question be within the party's control and that there has been an actual suppression or withholding of the evidence. *Brewer v. Quaker State Oil Refining Corp.*, 72 F.3d 326, 334 (3d Cir.1995). "No unfavorable inference arises when the circumstances indicate that the document or article in question has been lost or accidentally destroyed, or where the failure to produce it is otherwise properly accounted for." *Id.*

Plaintiffs vehemently argue that the record conclusively establishes that the evidence turned over to defense counsel on October 15, 2001, was the actual guidewire used during plaintiff's procedure in two pieces—the fractured guidewire and the fractured shaft—and that the evidence defense counsel turned over to plaintiffs' counsel on November 28, 2001, was *not* the evidence defense counsel received from Shadyside Hospital but instead merely was the fractured tip with a full exemplar wire rather than the fractured shaft of the original guidewire. Defendants just as vehemently contend that the evidence they turned over to plaintiffs' counsel on November 28, 2001 was the exact evidence they received from Shadyside Hospital. Plaintiffs reject out of hand defendants' contention to the contrary as nothing but conclusory explanations and unsupported speculation.

However, an objective look at the evidence submitted by plaintiffs to establish defendants' responsibility for the loss of the guidewire, namely, the sworn testimony of Lazar Palnik and Leslie Thayer, reveals that said evidence is anything but conclusive. In fact, after a review of the chain of custody evidence as a whole, the court concludes that it simply is not possible to definitively assign blame to anyone for the missing piece, and, indeed, a finding of fault on defendants' part would be every bit as speculative as a finding of fault on plaintiffs' part or on the part of Shadyside Hospital.

Plaintiffs' "conclusive" proof that defendants are responsible for the lost shaft consists of the following evidence, gleaned from the deposition testimony of Palnick and Thayer. *See* Exhibits L & M to Defendants' Motion *In Limine;* Exhibit 4 to Plaintiffs' Response to Defendants' Motion *In Limine;* and Exhibits 8 & 9 to Plaintiffs' Motion for Sanctions.

In early October 2001, after receiving a subpoena from defense counsel for production of the wire, Palnick, at that time counsel for Shadyside Hospital, received a sealed envelope from the Hospital's Risk Management Department. The sealed envelope was marked "ACS/Guidant guidewire retrieved 5/11/99." Inside the sealed envelope was a plastic bag, opaque on one side and clear on the other, containing what Palnick recollected to be one long piece of wire and a separate small piece of wire. Palnick testified that he held the longer wire in his hand, and, while looking at the tip through the glass jar in which it was contained, he believed in his mind "they could fit together." (Exhibit M to Defendants' Motion *In Limine* at p. 40).

After visually observing the evidence, Palnick put the evidence back in the sealed envelope, then, upon "advice of counsel", ordered that photographs be taken of the

guidewire.[3] Subsequently, when Sharon DiPaolo, defense counsel, came to pick up the guidewire on October 15, 2001, Palnick opened the package again and looked inside to check its contents before turning it over.

In addition to Palnick's testimony, plaintiffs rely on the deposition testimony of Leslie Thayer, who worked for Palnick and who was present in early October 2001 when Palnick inspected the evidence and on October 15, 2001 when the exchange was made to defense counsel. Thayer testified that it was her belief that the evidence provided to Palnick by Shadyside Hospital Risk Management Department and subsequently turned over to defense counsel was two separate pieces of the same wire that fractured during plaintiff's procedure on March 11, 1999. Exhibit L to Defendants' Motion *In Limine* at p. 44.

The court finds the foregoing evidence less than conclusive as neither Palnick nor Thayer had any knowledge of the chain of custody of the wire from May 11, 1999 until October 2001 and merely relied on the representations of unidentified individuals in the Risk Management Department that the wire in the sealed envelope was the fractured wire from plaintiff's procedure. Moreover, both Palnick and Thayer testified that they were not familiar with guidewires and had no ability to ascertain whether the evidence contained in the envelope was two pieces of one wire or one piece of a fractured wire along with another complete wire, other than concluding from their visual inspections that it "looked like" it fit together.[4] Finally, although Palnick ordered photographs be taken so there would be no question as to what the Hospital turned over, and Thayer testified such photographs in fact were taken, those pictures, like the shaft of the guidewire itself, have turned up missing.

Thus, in light of the cloudy chain of custody in the two and one-half year span from May 11, 1999 until October 2001, when the guidewire was in the possession of Shadyside Hospital, it is impossible for this court to ascertain who is responsible for the missing shaft, and any attempt to assign fault would be nothing but sheer speculation. As a material dispute exists as to what happened to the missing evidence, the imposition of sanctions against defendants clearly is unwarranted in this case. *See, e.g., Kerrigan v. Maxon Industries*, 223 F.Supp.2d 626, 642 (E.D.Pa.2002) (court declined to exclude evidence on spoliation grounds where material dispute existed as to whether spoliation actually occurred); *Gordner v. Dynetics Corp.*, 862 F.Supp. 1303, 1307 (M.D.Pa.1994) (sanctions inappropriate when no conduct on part of alleged spoliator is cause of destruction of evidence). Accordingly, plaintiffs' motion for sanctions for spoliation of evidence will be denied and defendants' motion *in limine* to exclude spoliation evidence will be granted.

An appropriate order will follow.

### ORDER

AND NOW, this 22nd day of March, 2004, for the reasons set forth in the memorandum above, IT IS ORDERED that:

---

**3.** Palnick testified: "I want a good record of this, so that there will be no question as to what we turned over." Exhibit M at p. 29.

**4.** It should be emphasized that neither Thayer nor Palnick measured the wire and neither compared it to a complete wire. As the difference in length between a complete wire and the shaft of the missing wire is no more than 3cm, it would be difficult even for an individual familiar with guidewires to note the distinction merely via visual inspection.

1) Plaintiffs' Motion for Sanctions for Spoliation (Document No. 49) be, and the same hereby is, denied; and,

2) Defendants' Motion *In Limine* to Exclude Spoliation Evidence (Document No. 46) be, and the same hereby is, granted.